# United States Court of Appeals
## For the First Circuit

No. 12-2204

NANCY GESHKE, mother and natural guardian of N.K.,
a minor, and individually,

Plaintiff, Appellant,

v.

CROCS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Stahl and Lipez,

Circuit Judges.

Patricia A. DeJuneas, with whom Sibbison & DeJuneas was on brief, for appellant.
Julie M. Walker, with whom Conor D. Farley and McElroy, Deutsch, Mulvaney & Carpenter, LLP were on brief, for appellee.

January 17, 2014

**SELYA, <u>Circuit Judge</u>.** CROCS are odd looking shoes, known for their comfort. The plaintiff alleges that this reputation for comfort masks a hidden peril: the shoes present a heightened risk to the safety of wearers using escalators, and the manufacturer has failed to warn of this risk. The district court found these allegations unsupported and entered summary judgment accordingly. The plaintiff appeals. After careful consideration, we affirm.

## I. BACKGROUND

We briefly rehearse the origins and travel of the case. We reserve factual details for later discussion.

In July of 2010, plaintiff-appellant Nancy Geshke visited Boston with her husband, son, and nine-year-old daughter. On July 19, the family boarded a descending escalator at the Aquarium Station of the Massachusetts Bay Transportation Authority (MBTA). The daughter, N.K., was wearing a pair of sandals manufactured by defendant-appellee Crocs, Inc. Those sandals, popularly known as CROCS, are a type of soft-soled resin clog.

The escalator bore warning signs admonishing riders about the importance of safe riding practices. Despite these admonitions, N.K.'s CROCS-shod right foot became entrapped in the side of the moving stairway. While N.K. screamed, an MBTA worker unsuccessfully attempted to activate the escalator's emergency brake. A bystander rushed to the rescue, freeing N.K.'s foot

before she reached the bottom comb plate (but not before she sustained injuries).

The plaintiff had purchased N.K.'s CROCS sandals near the family's California home in 2009. For present purposes, the defendant concedes that the sandals, when purchased, were not accompanied by any warnings with respect to the dangers of escalator entrapment.

In due course, the plaintiff, acting individually and as mother and next friend of her minor daughter, invoked diversity jurisdiction, see 28 U.S.C. § 1332(a)(1), and brought suit against the defendant in the United States District Court for the District of Massachusetts. She alleged, among other things, negligent design, failure to warn, and breach of an implied warranty of merchantability. These allegations were founded on the plaintiff's tripartite claim that CROCS sandals are prone to becoming entrapped in escalators; that the defendant knew of this risk; and that the defendant nevertheless failed either to redesign the product or to provide adequate warnings.

After pretrial discovery, the defendant moved for summary judgment. See Fed. R. Civ. P. 56(a). The plaintiff opposed the motion, but the district court granted it. See Geshke v. Crocs, Inc., 889 F. Supp. 2d 253, 265 (D. Mass. 2012). This timely appeal followed. In it, the plaintiff presses only two claims: failure to warn and breach of an implied warranty of merchantability. Because

the latter claim, as framed, depends on the asserted failure to warn, we — like the parties — proceed as if only the former claim is before us.[1]

## II. ANALYSIS

We review de novo the district court's grant of summary judgment.  See Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010).  In conducting this tamisage, we take all properly documented facts in the light most hospitable to the nonmoving party (here, the plaintiff) and draw all reasonable inferences therefrom to her behoof.  See Gomez v. Stop & Shop Supermkt. Co., 670 F.3d 395, 396 (1st Cir. 2012).  We are not wedded to the district court's reasoning but, rather, may affirm the entry of summary judgment on any ground made manifest by the record.  See González-Droz v. González-Colón, 660 F.3d 1, 9 (1st Cir. 2011).

---

[1] Such economy of analysis is possible because, in Massachusetts, claims for breach of an implied warranty of merchantability arising out of a supposed failure to warn are analogous to failure-to-warn claims grounded in negligence.  See Carrel v. Nat'l Cord & Braid Corp., 852 N.E.2d 100, 109 n.12 (Mass. 2006); Hoffman v. Houghton Chem. Corp., 751 N.E.2d 848, 859 (Mass. 2001).  To recover under an implied warranty theory, as under a negligence theory, a plaintiff must establish that the product is in some way dangerous.  See Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1021 (Mass. 2013); Restatement (Third) of Torts: Prods. Liab. § 2(c) (1998); Restatement (Second) of Torts § 402A (1965); see also W. Page Keeton et al., Prosser and Keeton on Torts § 99, at 694 (5th ed. 1984) (declaring "there is no question" that liability attaches if product is "recognizably dangerous").  In the absence of a danger sufficient to give rise to a cognizable duty to warn, a plaintiff will perforce be unable to make the showing needed for a breach of warranty claim.

-4-

To prevail at summary judgment, the movant must show "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the party who bears the burden of proof at trial is faced with a properly constituted summary judgment motion, defeating the motion depends on her ability to show that such a dispute exists. See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). Such a showing "requires more than the frenzied brandishing of a cardboard sword." Calvi v. Knox Cnty., 470 F.3d 422, 426 (1st Cir. 2006). "The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment." Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 65 (1st Cir. 2012).

State law provides the substantive rules of decision in a diversity case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In this instance, we may forgo an independent choice-of-law analysis and accept the parties' reasonable assumption that the relevant law is the law of Massachusetts. See Shay v. Walters, 702 F.3d 76, 79-80 (1st Cir. 2012).

To recover on a claim for negligence under Massachusetts law, a plaintiff must carry the burden of proving the elements of duty, breach, causation, and damages. See Leavitt v. Brockton

<u>Hosp., Inc.</u>, 907 N.E.2d 213, 215 (Mass. 2009). In this case, we begin — and end — with the question of whether the plaintiff has adduced sufficient evidence to show the breach of some legally cognizable duty.

Generally speaking, a manufacturer owes a duty to warn foreseeable users of the dangers inherent in the use of its products. <u>See</u> <u>Taylor</u> v. <u>Am. Chemistry Council</u>, 576 F.3d 16, 24 (1st Cir. 2009) (construing Massachusetts law); <u>Bavuso</u> v. <u>Caterpillar Indus., Inc.</u>, 563 N.E.2d 198, 201 (Mass. 1990). Whether such a duty arises in any given instance depends on context: Massachusetts law gives rise to a duty to warn only where there is "some reason to suppose a warning is needed." <u>Maldonado</u> v. <u>Thomson Nat'l Press Co.</u>, 449 N.E.2d 1229, 1231 (Mass. App. Ct. 1983) (rescript). And a warning is not needed unless there is some dangerous aspect of the product against which the warning might act to mitigate risk. <u>See</u> <u>Carey</u> v. <u>Lynn Ladder & Scaffolding Co.</u>, 691 N.E.2d 223, 224 (Mass. 1998) (rescript); <u>see</u> <u>also</u> Restatement (Second) of Torts § 388 (1965) (imposing duty to warn if product "is or is likely to be dangerous").

The pivotal issue in this case relates to the danger ostensibly imposed by CROCS sandals, not the danger of riding escalators generally. Escalators can be dangerous, but the defendant neither manufactured nor maintained the escalator with which N.K. became entangled (and at any rate, that escalator

-6-

featured signage that warned conspicuously of its dangers).  Here, then, a duty to warn is not owed unless the plaintiff can at least make a tenable showing that CROCS pose a heightened risk of escalator entrapment.[2]  We turn to that inquiry.

As an initial matter, the plaintiff argues that the question of whether the defendant owes a duty to warn is a question of fact for the jury.  The defendant counters that the question is to be decided by the court as a matter of law.  Each of these views derives some support from the case law.

The general tort rule in Massachusetts is that the existence of a duty is a matter of law to be decided by the court.  See, e.g., O'Sullivan v. Shaw, 726 N.E.2d 951, 954 (Mass. 2000); Davis v. Westwood Grp., 652 N.E.2d 567, 569 (Mass. 1995).  But some cases indicate, at least in the analogous breach of implied warranty context, that the determination as to whether a product is "dangerous" is for the jury.  See, e.g., Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1011-14 (Mass. 2013); Carrel v. Nat'l Cord & Braid Corp., 852 N.E.2d 100, 107-08 (Mass. 2006).

_____

[2] Because the plaintiff has not made such a showing here, see text infra, we need not address the defendant's further argument that the risk here is "the combined circumstances of an individual improperly riding a completely separate product, an escalator, while wearing Crocs shoes," and, thus, no duty to warn would arise since that risk only comes into play when the CROCS-wearing individual improperly uses another manufacturer's product (an escalator).

In a sense, deciding which line of cases applies in a particular instance is akin to deciding how many angels can dance on the head of a pin. We need not enter into this metaphysical debate: even if the two lines of cases are in tension (a matter on which we take no view), the distinction is not material to the outcome here. Assuming without deciding that the determination of dangerousness can be for the jury, it nonetheless must rest on an adequate factual predicate. See Cordi-Allen v. Conlon, 494 F.3d 245, 251-52 (1st Cir. 2007); Fithian v. Reed, 204 F.3d 306, 308-09 (1st Cir. 2000). Consequently, we focus the lens of our inquiry on whether the plaintiff has adduced sufficient evidence to permit a rational jury to find that CROCS sandals pose a heightened risk of escalator entrapment.

The plaintiff claims that her theory of heightened risk is supported by several evidentiary pillars. But as we explain below, none of these is adequate to ground a conclusion that CROCS present a heightened risk of injury on escalators.

We start with the historical information in the record indicating that N.K. was not the first child to have a CROCS sandal entrapped in an escalator. Between 2006 and 2009 the defendant fielded a dozen complaints, more or less, from customers who claimed to have had their feet entrapped in escalators while

-8-

wearing CROCS sandals.[3]  Indeed, the complaints were sufficiently numerous that the defendant created a standard intake form for them.  Withal, the complaints are captured only in cryptic incident reports; and the record reveals very little about either their substance or their circumstances.

There is, of course, a significant difference between anecdotes and probative evidence.  The meager anecdotal history contained in the incident reports tells us nothing about whether the complaints related to the dangers normally attendant to escalator use (as opposed to some special danger posed by CROCS). Furthermore, the history sheds no light on whether this quantum of complaints is atypical in the shoe industry.  For aught that appears, Nike or Reebok or Puma may have received far more complaints than the defendant, whether measured in terms of a gross count or in terms of a ratio to the number of shoes sold.

To say more on this point would be supererogatory.  The bottom line is that the incident reports, whether viewed alone or in combination with other evidence, fall well short of supporting a reasonable inference that CROCS pose a heightened risk of escalator entrapment.  Cf. Goldman v. First Nat'l Bank of Bos., 985

---

[3] In her complaint, the plaintiff alleged that around 300 such incidents had occurred, and the district court referenced this number.  Geshke, 889 F. Supp. 2d at 263.  But unverified allegations in a complaint are not evidence, see Borges, 605 F.3d at 3, and the summary judgment record contains nothing of evidentiary quality supporting the figure mentioned in the complaint.

F.2d 1113, 1119 (1st Cir. 1993) (refusing to allow inference of employment discrimination on basis of anecdotal evidence).

The record also indicates that, in May of 2008, following an incident reported to the Japanese Ministry of Economy, Trade, and Industry, Japan's National Institute of Technology and Evaluation, produced a report (the METI-NITE Report). This report chronicles the results of side-by-side escalator entrapment testing of resin sandals (made by seven unidentified manufacturers), boots, beach sandals, and canvas shoes. After attributing more entrapments to resin sandals than to other tested footwear (at least on certain types of escalators and under some conditions), the report concludes that resin sandals have "a tendency to become entrapped in escalators."

We need not dwell on the import of this document. The district court rejected the plaintiff's proffer of the METI-NITE Report, noting both its lack of authentication, <u>see</u> Fed. R. Evid. 902(3), and the plaintiff's failure to put forward an expert to accredit the methodology, explain the results, and put the results in context.[4] <u>See</u> <u>Geshke</u>, 889 F. Supp. 2d at 262-63. On appeal, the plaintiff does not challenge the finding that the content of the METI-NITE Report is inadmissible. That ends the matter. <u>See</u> <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 49-50 (1st Cir. 1990)

---

[4] In this regard, we note that the only relevant testimony in the record describes the report's methodology as "problematic." The plaintiff offered no contrary evidence.

-10-

(explaining that material that is inadmissible cannot create a genuine issue of material fact sufficient to thwart summary judgment).

In an effort to get some mileage out of the inadmissible METI-NITE Report, the plaintiff points to the defendant's response to that report: its design of a new sandals model called the Blaze for release in the Japanese market. In particular, the plaintiff cites an intra-company e-mail, in which the general manager of CROCS Japan wrote that "[b]ecause of escalator issue[,] Ministry [sic] asked us to start selling new products which can reduce accident [sic] by end of July."

But this evidence, when unmoored from the substance of the inadmissible METI-NITE Report, is highly ambiguous. Although e-mails in the record indicate that the defendant considered the situation "urgent," this assessment does not tend to establish that the sandals were dangerous. Companies vary product designs for a multitude of reasons, and the fact that a company responds in earnest to a regulator's concern is not, in and of itself, sufficient to warrant a conclusion that the regulator's concern is justified. Cf. Gross v. Stryker Corp., 858 F. Supp. 2d 466, 474 n.13 (W.D. Pa. 2012) (refusing to consider voluntary product recall as probative of regulatory violation). The lack of support for such a conclusion is most noticeable where, as here, the factfinder

would not have the benefit of hearing either what the regulator's concern was or what the basis for that concern may have been.

The short of it is that the CROCS Blaze story, devoid of support and context, cannot ground a reasonable inference that CROCS sandals present a heightened risk of danger on escalators.

The plaintiff pins her final hope on the defendant's decision to include a generalized escalator safety warning on the hangtag of its sandals.[5] The label exhorts purchasers to adhere to safe escalator-riding practices such as standing in the middle of the step, refraining from contact with surfaces next to the moving stairs, stepping carefully upon ingress and egress, and holding children's hands. The plaintiff suggests that the adoption of this warning shows that the defendant must believe that its sandals present an escalator safety issue.[6]

This evidence does not advance the plaintiff's cause. The warning label itself makes no mention of any special danger

---

[5] The record is tenebrous as to when this decision was made. Although the plaintiff denies that the CROCS that she purchased had such a hangtag, the defendant demurs. We need not resolve this contretemps because the defendant, anticipating the district court's application of the summary judgment standard, has accepted, arguendo, the plaintiff's version.

[6] This argument raises obvious questions about the applicability of the rule barring the admission in tort cases of evidence of subsequent remedial measures. See Fed. R. Evid. 407; see also Nieves-Romero v. United States, 715 F.3d 375, 380 (1st Cir. 2013). Neither party has briefed this issue, and we need not decide it. As we explain below, the new hangtag is not probative of a past failure to warn.

-12-

posed by CROCS. It speaks, in the most general terms, about escalator safety. It does not in any way suggest that CROCS either present a heightened risk of danger on escalators or are more prone to escalator mishaps than other footwear.

The only evidence concerning why the defendant added such a warning is unhelpful to the plaintiff. It consists solely of an innocuous statement that the hangtag was added "to notify a consumer of . . . [p]roduct safety." The deponent (the defendant's chief executive officer) explained that the hangtag, consistent with its language, was designed to inform CROCS customers of the risks associated with riding escalators in an unsafe manner. While the plaintiff hints darkly that this statement may be apocryphal, our summary judgment duty to draw inferences in favor of the nonmovant does not permit us to offset uncontroverted testimony through adverse credibility determinations. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986); see also Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 512 (1984) ("Normally . . . discredited testimony is not considered a sufficient basis for drawing a contrary conclusion.").

Viewed against this backdrop, the hangtag evidence, alone or in combination with other facts of record, is too thin to carry the weight that the plaintiff loads upon it. To conclude from this evidence that CROCS pose a heightened risk of escalator entrapment would require a surfeit of speculation and surmise far beyond the

outer limits of the summary judgment standard.  See Anderson, 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)); Miss. Pub. Emps.' Ret. Sys. v. Bos. Scientific Corp., 649 F.3d 5, 28 (1st Cir. 2011) (similar).

To sum up, the plaintiff's case hinges on demonstrating that the defendant's product was particularly dangerous on escalators.  Yet even after full discovery, the plaintiff failed to adduce significantly probative evidence on this point sufficient to allow a reasonable jury to find in her favor.  Thus, she has not made the required showing of each and every element essential to her case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (requiring nonmovant to "do more than simply show that there is some metaphysical doubt as to the material facts").  She has pointed to CROCS sandals as a possible cause of her daughter's misfortune, but "[m]erely raising possibilities does not bridge the gap between fact and theory." Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 58 (1st Cir. 2011).

**III.  CONCLUSION**

We need go no further.  From this record, we cannot tell whether CROCS present a heightened risk of escalator entrapment. What we can tell, however, is that the plaintiff has failed to

adduce significantly probative evidence to that effect.  The entry

of summary judgment is


**<u>Affirmed</u>.**