# United States Court of Appeals
## For the First Circuit

No. 13-1817

PRISCILLA BATISTA,

Plaintiff, Appellant

v.

COOPERATIVA DE VIVIENDA JARDINES DE SAN IGNACIO, ET AL.

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Thompson, and Barron,

Circuit Judges.

Guillermo F. DeGuzmán, with whom DeGuzmán Law Offices, was on brief, for appellant.
Luis A. Guzmán Dupont, for appellees.

January 13, 2015

**BARRON, <u>Circuit Judge</u>.** The appellant contends the Fair Housing Act's requirement that landlords must make reasonable accommodations for their disabled tenants entitles her to stay in her apartment of many years, even though she had been told she was no longer eligible for the federal subsidy on which she had been relying to make the rent. She also contends her landlord impermissibly discriminated against her because of her disability in other ways, and also that it retaliated against her for pursuing her Fair Housing Act rights. The District Court granted summary judgment for that landlord, a private housing cooperative in San Juan, Puerto Rico, and a number of the cooperative's board members, whom the appellant had also named as defendants. For the reasons discussed below, we affirm in part, reverse in part, and remand in part.

**I.**

Since 1983, Priscilla Batista has leased the same three-bedroom apartment at the Cooperativa de Vivienda Jardines de San Ignacio, a San Juan, Puerto Rico housing cooperative. Her two children used to live in the three-bedroom apartment with her, but they moved out in 1997 and 2003, respectively.

For most of the time Batista has lived at the Cooperativa, she received benefits under the federal housing assistance program known as Section 8, and these benefits enabled her to cover the rent for her apartment. Under that program,

government subsidies are available for "low-income families" so they may "obtain[] a decent place to live." 42 U.S.C. § 1437f(a). Those subsidies assist Section 8 recipients with the rent they owe to private landlords. See id. § 1437f(o). Although the Section 8 program is a federal one, it is administered by so-called "public housing agencies" at the state and local level. See id. § 1437f(b)(1). In Puerto Rico, the entity responsible for administering the Section 8 program is the Puerto Rico Housing Finance Authority.

One of the obligations of the Housing Finance Authority is to conduct a management review of buildings that house recipients of Section 8 assistance. During such a review of the Cooperativa in October of 2007, the Puerto Rico Housing Finance Authority observed that four units, including Batista's three-bedroom Unit 1714A, were "over-housed" for Section 8 purposes. By "over-housed," the agency meant the tenants in those four units were living in units larger than those they qualified for under Section 8. The Cooperativa accordingly sent Batista -- who was by then living alone in the three-bedroom unit -- a letter later that month informing her that, under Section 8, she was required either to transfer to an appropriately sized unit (in which case she could continue to receive Section 8 assistance) or to remain in her three-bedroom Unit 1714A but pay the fair market rent without such assistance.

The Cooperativa sent Batista additional letters in November of 2008 and February of 2009 informing her that a two-bedroom apartment was available and advising her that, if she chose to stay in Unit 1714A, she would have to pay market-rate rent without the Section 8 assistance as of April 1, 2009. Batista did not respond to any of the letters.

Three weeks before the April 1 deadline, however, Batista submitted a request to the Cooperativa for reasonable accommodation under the Fair Housing Act on account of her disability.[1] Batista's accommodation request stated that, in addition to a bedroom, her disability requires that she have one room for physical therapy and another room for reading and crafts -- and, consequently, that moving to a smaller unit would compromise her health. The request further stated that in light of her hyper-sensitivity to sounds, Batista could not move to the proposed two-bedroom unit, which she claimed was noisier than her current unit.

Upon receiving this request, the Cooperativa asked the Housing Finance Authority and the U.S. Department of Housing and Urban Development ("HUD") for guidance on how to resolve the matter. The Cooperativa also tabled any increase in Batista's rent for Unit 1714A until it heard back.

---

[1] Batista suffers from osteoporosis and fibromyalgia, as well as severe fatigue, depression, migraines, blood anemia, colon irritability, and hypersensitivity to sound.

The Housing Finance Authority responded to the Cooperativa's inquiry on May 13, 2009. The Housing Finance Authority's letter to the Cooperativa stated that the Cooperativa "should offer a smaller unit to the member and require paying the market rent if [Batista] refuses to transfer to another unit." The letter also stated that when a tenant, such as Batista, "requests a reasonable accommodation for medical conditions, the [Cooperativa] must determine the eligibility of [the] applicant on a case by case basis."

After receiving the Housing Finance Authority's letter and a separate response from HUD, the Cooperativa performed a noise-level test for the two-bedroom apartment it had offered Batista. According to the Cooperativa, the results of its independent "noise pollution test" showed that the two-bedroom unit it had offered would not have been unsuitably loud. The Cooperativa did not, however, analyze Batista's medical condition itself. Instead, the Cooperativa relied on findings HUD had compiled after it had received the Cooperativa's letter seeking assistance in responding to Batista's request for reasonable accommodation.

The Cooperativa then denied Batista's accommodation request. Batista nonetheless remained in her three-bedroom unit. (She stopped receiving Section 8 benefits at some point

thereafter.[2])  And, while still residing there, she filed an administrative complaint with HUD on April 12, 2010.  The complaint alleged the Cooperativa had violated the Fair Housing Act by failing to provide the accommodation she sought.  The complaint also alleged the Cooperativa had retaliated against her because she had recently prevailed in a separate HUD proceeding against the Cooperativa.  That earlier proceeding arose out of the Cooperativa's failure to provide Batista with a key to the garbage depository on her floor.

In that earlier proceeding, the HUD Administrative Law Judge found that the Coopertiva's failure in that regard had caused Batista undue hardship in light of her disability and, on that basis, issued a Consent Order sanctioning the Cooperativa.  This Consent Order required the Cooperativa to give Batista a key to the depository, pay her $10,000, issue a written apology, and "[r]emove any and all blemishes, sanctions, etc, arising out of this case, from [her] record, including any outstanding fees and the revocation of her voting privileges."

------

[2] The Cooperativa contends that Batista's participation in Section 8 was canceled as a consequence of her decision to remain in an "over-housed" unit.  Batista disputes this.  She points out that she received letters from the Cooperativa requesting that she pick up "negative rent" checks through 2011, and -- although she admits that neither the letters nor the checks reference "Section 8" specifically -- she claims that those checks identify her as a Section 8 recipient through 2011.  Resolution of this factual dispute is unnecessary to deciding this appeal, as there is no dispute that Batista no longer receives the subsidy.

In evaluating the reasonable accommodation and retaliation claims in Batista's April 2010 complaint, HUD found in favor of the Cooperativa as to each. HUD concluded that Batista had not submitted medical documentation stating that a three-bedroom unit, as opposed to a two-bedroom unit like the one the Cooperativa had offered, was necessary to accommodate her disability. HUD further found that the Cooperativa had not retaliated against Batista in violation of the Fair Housing Act. HUD did not address whether the fact that Batista had been denied Section 8 assistance for the apartment in which she continued to reside was relevant to the reasonable accommodation claim.

Batista then filed suit in federal court. She named the Cooperativa and a number of its past and present board members as defendants. In addition to reasonable accommodation and retaliation claims under the Fair Housing Act, Batista also alleged a separate disparate treatment claim under that Act as well. The District Court granted summary judgment for the defendants on May 15, 2013, finding in their favor on the merits of the reasonable accommodation and disparate treatment claims and concluding that it lacked jurisdiction to decide the retaliation claim. Batista timely appealed that decision.

**II.**

We review a district court's decision granting summary judgment de novo. Geshke v. Crocs, Inc., 740 F.3d 74, 76 (1st Cir.

2014).  In doing so, we evaluate "the record in the light most favorable to the party opposing the motion"; we also "draw[] all reasonable inferences in that party's favor."  Morrissey v. Bos. Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).  Our review "is not cabined by the lower court's rationale."  González-Droz v. González-Colón, 660 F.3d 1, 9 (1st Cir. 2011).  Instead, we may affirm the entry of summary judgment "on any ground made manifest by the record," Geshke, 740 F.3d at 77, so long as the record "reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010).

## A.

We begin with Batista's reasonable accommodation claim. The Fair Housing Act prohibits discriminatory housing practices based on a person's handicap.  See 42 U.S.C. § 3604(f)(2) (prohibiting discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of an individual).  One type of discriminatory housing practice is the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal opportunity to use and enjoy a dwelling."  Id. § 3604(f)(3)(B).

-8-

The Cooperativa conceded that Batista qualifies as handicapped under the Act and that it either knew or should have known that fact. See Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 67 (1st Cir. 2010). But the District Court determined there was not a triable issue of fact as to whether the Cooperativa had failed to provide a "reasonable and necessary" accommodation, see id., and we agree.[3]

According to Batista, she was simply "requesting to use her HUD subsidy" under Section 8 to fund the rent for the three-bedroom apartment that she believed she was entitled to stay in due to the disability-based accommodation that she contends the Fair Housing Act required the Cooperativa to make. But while the Fair Housing Act obliges private landlords to adjust their policies to make reasonable accommodations for their tenants who otherwise receive Section 8 subsidies, see 42 U.S.C. § 3604(f)(3)(B), the Puerto Rico Housing Finance Authority, not the Cooperativa, is the entity responsible for administering Section 8 benefits. In doing so, the Housing Finance Authority, not the Cooperativa, established the over-housing policy that led to the former's revocation of Batista's Section 8 benefits. And so far as we are aware, Batista

---

[3] Because we conclude Batista has not shown her requested accommodation is a "reasonable" one, we need not address whether she is right that the Cooperativa's decision to reject her accommodation request was insufficiently particularized because it failed to account for her emotional condition, osteoporosis, fibromyalgia, or migraines in making its decision to deny her request.

has never challenged the Housing Finance Authority's determination that, under its over-housing policy, she does not qualify for the subsidy so long as she stays in the three-bedroom unit.

Perhaps she could. See Pub. Hous. Mgmt. & Occupancy Div., U.S. Dep't of Hous. & Urban Dev., Public Housing Occupancy Guidebook 64 (2003), available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_10760.pdf ("Exceptions to the largest permissible unit size" for Section 8 purposes "may be made in case of reasonable accommodations for a person with disabilities."); cf. 24 C.F.R. § 982.555(a)(1)(iii) (public housing agency must give Section 8 participant family opportunity for informal hearing to consider whether determination of family unit size under applicable subsidy standards complies with applicable laws and regulations); Colvin v. Hous. Auth. of City of Sarasota, Fla., 71 F.3d 864, 866 (11th Cir. 1996) (recognizing right to challenge termination of Section 8 assistance under certain circumstances). But Batista has sued the Cooperativa instead. And the Cooperativa is not responsible for the Section 8 subsidy determination. Nor has the Cooperativa said it would decline to make the current apartment available to Batista if she were deemed eligible for a Section 8 subsidy to pay the market rent.

As a result, Batista must -- but has not -- explained why a private landlord, like the Cooperativa, acts unlawfully in

refusing to provide the subsidy itself.  See Howard v. City of Beavercreek, 276 F.3d 802, 806 (6th Cir. 2002) ("An accommodation is 'reasonable' when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens.'" (quoting Smith & Lee Assocs. v. City of Taylor, 102 F.3d 781, 795 (6th Cir. 1996))).  Indeed, not even Batista argues her requested accommodation would be a "reasonable" one under the Act if the subsidy she previously received were not reinstated.

Seeing no way this suit against the private landlord could result in an order to the administering agency for the Section 8 program to reverse course and reinstate the rental subsidy, we do not see how the requested accommodation could be a reasonable one.  Its denial by the Cooperativa rested solely on Batista's inability to pay, which she appears to concede arises only from her need for federal rental support.  See Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 300 (2d Cir. 1998) ("impecunious people with disabilities stand on the same footing as everyone else"); cf. id. at 310 (Calabresi, J., dissenting) (addressing a claim brought by Section 8-eligible recipients who alleged they were in need of the assistance because their disability had made them poor).  And thus, she does not contend the denial of the accommodation resulted from any policy of the Cooperativa that would prevent her from acquiring the funds necessary to make the rent, which she does not contend must be

-11-

lowered.  We accordingly affirm the District Court's decision to grant the defendants summary judgment on this claim.

**B.**

In addition to her failure-to-accommodate claim, Batista also alleged in her complaint that the Cooperativa had "engaged in a definite pattern of discriminatory actions against [her]" in violation of the Fair Housing Act.  The Cooperativa had done so, Batista contends, by instituting multiple claims against her, disallowing her from voting in resident-member assemblies, attempting to prevent visitors from entering the premises to see her, threatening to evict her from her unit, and more.

The District Court treated these allegations as presenting a disparate treatment claim under the Fair Housing Act, see generally Astralis Condo. Ass'n, 620 F.3d at 66 (Fair Housing Act "contemplates three types of claims for perceived discrimination: 'disparate treatment, disparate impact, and failure to make reasonable accommodations'" (quoting Smith & Lee Assocs., 102 F.3d at 790)), and so do we.  Summary judgment for the defendant is warranted on a disparate treatment claim "if the plaintiff cannot produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent." Gallagher v. Magner, 619 F.3d 823, 831 (8th Cir. 2010).

We may assume the Cooperativa did what Batista alleges -- attempting to collect money from her she did not owe, stopping her from voting in the resident-member assemblies, threatening to evict her, and so on. But even still, Batista has put forward no evidence, nor pointed us to any, to suggest that an impermissible, disability-based discriminatory purpose motivated the Cooperativa's actions.

In fact, Batista argued below (and did so again in her brief on appeal) that the Cooperativa's "true intent was to eliminate Section 8 beneficiaries from the housing cooperative," and thus one unrelated to her disabled status. And while Batista has tried on appeal to recast her argument by claiming that "[i]t isn't hard to visualize how [her] position, as a handicapped person protected under several applicable federal laws supporting reasonable accommodation, was particularly troublesome for [the appellees] in light of their 'intent to eliminate Section 8 beneficiaries' from Cooperativa," this argument still frames the Cooperativa's actions as having been motivated by an "intent to eliminate Section 8 beneficiaries" from the Cooperativa rather than by her status as a disabled person protected by the Fair Housing Act. Thus, we affirm the District Court's decision to grant the Cooperativa summary judgment on this claim as well.

Finally, Batista alleges that after the Administrative Law Judge found in her favor in the proceeding about the garbage depository issue, the Cooperativa "swift[ly]" retaliated against her. The Cooperativa did so, she claims, by (1) "initiating collection proceedings against [her] for amounts she allegedly owed since 1998" and (2) "denying her request for reasonable accommodations and ignoring her need to remain in her present three bedroom apartment due to her multiple health conditions."

Batista's complaint does not directly refer to the Consent Order the Administrative Law Judge issued at the close of the garbage depository case, but the District Court interpreted Batista's retaliation claim as if it were an effort to enforce that Order. Consistent with that understanding, the District Court then dismissed the claim without prejudice -- for, under 42 U.S.C. § 3612(m), only the First Circuit has jurisdiction to enforce such an Order. See 42 U.S.C. § 3612(m) ("[A]ny person entitled to relief under the order may petition for a decree enforcing the order in the United States court of appeals for the circuit in which the discriminatory housing practice is alleged to have occurred.").

But the paragraph of Batista's complaint that sets forth the retaliation claim does not cite to the provision for enforcing consent orders, 42 U.S.C. § 3612(m). Instead, the paragraph refers

to section 813(c)(1) of the Fair Housing Act, 42 U.S.C. § 3613(c)(1), which deals with private enforcement of the Act's guarantees. And one of those guarantees, of course, is freedom from "coerc[ion], intimidat[ion], threat[], or interfer[ence] . . . on account of [a person's] having exercised or enjoyed" the right to seek redress for housing discrimination. 42 U.S.C. § 3617.

Thus, although the complaint is less than clear as to its target, Batista's retaliation claim is best understood as an attempt to enforce not the Consent Order itself, but the right against retaliation the Fair Housing Act secures -- a right the District Court surely does have jurisdiction to enforce. See id. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief . . . ."). Accordingly, we reverse the District Court's decision to dismiss Batista's retaliation claim with prejudice, and we remand for the District Court to decide the claim on the merits.

**III.**

For the foregoing reasons, we affirm in part, reverse in part, and remand in part. No costs are awarded.

-15-