La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Comparecen ante nos las compañías M. Cuebas, Inc. (en adelante M. Cuebas) y Bohío International Corporation (en adelante Bohío), y mediante los cuatro (4) recursos consolidados de epígrafe nos solicitan que revisemos dos (2) Sen *104 tencias emitidas por el Tribunal de Apelaciones. En estas, el foro apelativo intermedio revocó unas Sentencias emitidas por diferentes salas del Tribunal de Primera Instancia en las que se desestimaron sumariamente varias Querellas presentadas por seis (6) exempleados de M. Cuebas al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185b et seq.
Los casos consolidados de autos nos proveen la oportunidad para determinar el estándar específico que debe utilizar el Tribunal de Apelaciones al momento de revisar Sentencias emitidas sumariamente por el foro primario. Ello a la luz del texto de la nueva Regla 36 de Procedimiento Civil, 32 LPRAAp. V.
Previo a examinar estos asuntos, pasemos a exponer los hechos que dieron génesis a los casos consolidados que hoy atendemos.
I
Los recursos de epígrafe forman parte de una saga de Querellas que fueron presentadas en diversas salas del Tribunal de Primera Instancia por varios exempleados de M. Cuebas contra esa corporación y la compañía Bohío. De los autos, surge que M. Cuebas fue una empresa que durante cincuenta (50) años se dedicó a la producción y distribución de, inter alia, especias, flanes, sofrito, habichuelas y comida para aves. La compañía mercadeaba y vendía estos productos bajo las marcas “Don Goyo”, “Don Toño”, “Flan del Cielo”, “Caramelo del Cielo”, “Tweet” y “Rikas”.
Como condición para seguir comprando sus productos, en el 2010, el principal cliente de M. Cuebas le requirió que estableciera un programa de control de calidad para sus productos. Para cumplir con ese requisito, M. Cuebas se vería forzado a invertir una cantidad millonaria de dinero en mejoras a su negocio. Ante ese escenario, la compañía decidió cerrar totalmente sus operaciones.
*105 Así las cosas, en aras de capitalizar con el cierre de sus operaciones, M. Cuebas comenzó negociaciones con Bohío con el propósito de venderle ciertos activos. El 28 de marzo de 2011, ambas compañías suscribieron una Carta de Intención en la que estipularon los términos y las condiciones que gobernarían el futuro Acuerdo de Venta de Activos entre las partes.(1) Días después, el 8 de abril de 2011, M. Cuebas comenzó el procedimiento de cierre de sus operaciones, incluso informar a sus empleados en cuanto al cese de operaciones de la empresa. Además, ese mismo día comenzó el proceso de despido de su fuerza trabajadora.
Posteriormente, el 18 de agosto de 2011, ambas corporaciones suscribieron un Asset Purchase Agreement. En este documento, las partes pactaron la compraventa de ciertos derechos de marcas y algunas recetas de M. Cuebas, así como una cantidad de máquinas para confeccionar algunas de las recetas compradas que se especificaron en el Acuerdo de Venta de Activos. Según mencionado, como parte de esta transacción, las operaciones de M. Cuebas cesaron de existir.
En el Acuerdo entre las partes se especificó que Bohío no compraría el nombre de M. Cuebas, que no estaría obligado a contratar a ninguno de los empleados de esa corporación y que no se convertiría en su patrono sucesor. M. Cuebas asumió la responsabilidad por todo el procedimiento de cierre de sus operaciones. Para julio del 2011, la compañía ya no elaboraba ningún producto, y para octubre de ese año, M. Cuebas había despedido a la totalidad de su fuerza trabajadora.
A partir de agosto del 2011, diferentes exempleados de M. Cuebas que fueron despedidos como parte del cierre de *106 operaciones de la empresa, entre los que se incluyen los seis (6) apelados de epígrafe, presentaron Querellas al amparo de la Ley Núm. 80, supra, contra M. Cuebas y Bohío. En estas, alegaron que eran empleados a tiempo indeterminado de M. Cuebas y que fueron despedidos sin justa causa, por lo que tenían derecho a los remedios provistos por la Ley Núm. 80, supra. Además, alegaron que Bohío respondía bajo ese estatuto ya que era el “patrono sucesor” de M. Cuebas porque compró su maquinaria y siguió manufacturando y vendiendo sus productos. Además, alegaron que entre M. Cuebas y Bohío se dio la figura del “traspaso de negocio en marcha” codificada en la Ley Núm. 80, supra.
Luego de varias incidencias procesales, M. Cuebas y Bohío presentaron sendas solicitudes de sentencia sumaria. M. Cuebas argumentó que no existía controversia en cuanto al hecho de que había cerrado la totalidad de sus operaciones, por lo que no respondía bajo la Ley Núm. 80, supra. Por su parte, Bohío argumentó que no existía controversia en cuanto a que operaba su empresa previamente al negocio que llevó a cabo con M. Cuebas y que no estaban presentes los requisitos para aplicar la doctrina de “patrono sucesor” o de “traspaso de negocio en marcha”.
En los cuatro (4) casos consolidados de epígrafe, diferentes salas del Tribunal de Primeria Instancia emitieron unas Sentencias en las cuales se desestimaron sumariamente las reclamaciones de los apelados. Específicamente, el 28 de enero de 2013, el Tribunal de Primera Instancia, Sala Superior de Bayamón, desestimó sumariamente la Querella presentada por el Sr. Carlos Meléndez González. Por su parte, el 28 de enero de 2013, el Tribunal de Primera Instancia, Sala Superior de Toa Alta, emitió tres (3) Sentencias Parciales en las que desestimó las reclamaciones de los coapelados Héctor Ocasio Marrero, Rosalina Méndez Rodríguez y Roberto Caraballo Aquino. En síntesis, los foros primarios concluyeron que ante los hechos *107 incontrovertidos que constaban en el expediente, M. Cuebas no era responsable ante sus exempleados de acuerdo con la Ley Núm. 80, supra, y que entre esa compañía y Bohío no hubo un traspaso de negocio en marcha. Los tribunales concluyeron que tampoco estaban presentes los requisitos para aplicar la doctrina de "patrono sucesor”.
Todos estos exempleados recurrieron al Tribunal de Apelaciones y alegaron que sí existía controversia en cuanto a los hechos materiales del caso, por lo que no procedía desestimar sumariamente sus reclamaciones. El foro apelativo intermedio consolidó cuatro (4) de estos casos y el 21 de marzo de 2013 emitió una Sentencia en la que revocó las Sentencias Sumarias emitidas por los foros primarios de Bayamón y Toa Alta. El Tribunal de Apelaciones razonó lo siguiente:
Podemos colegir que ante las controversias planteadas en los casos que nos ocupan, resulta sumamente difícil que el tribunal pueda reunir ante sí toda la verdad de los hechos a través de documentos. [...] Así pues, aunque el tribunal puede dictar sentencia sumaria a su discreción, no es aconsejable resolver sumariamente este tipo de casos.
En vista de lo antes expresado, nos resulta forzoso concluir que los casos de marras requieren que [el] Foro de Instancia haga un análisis ponderado y exhaustivo de la realidad fáctica en ellos envuelta, a la luz de la normativa laboral vigente, particularmente, en tomo a si en efecto se trató de un cierre de las operaciones de la querellada M. Cuebas y si les es de aplicación o no, la doctrina de patrono sucesor.(2)
Durante mayo del 2013, M. Cuebas y Bohío recurrieron a este Tribunal mediante dos (2) Recursos de Apelación. En estos argumentaron que el Tribunal de Apelaciones erró al revocar las Sentencias de los foros de instancia ya que no existía controversia en cuanto a los hechos materiales del caso, por lo que procedía dictar Sentencia Sumaria a su favor. El 25 de octubre de 2013 acogimos las apelaciones *108 presentadas por ambas corporaciones (casos AC-2013-41 y AC-2013-46).(3)
De forma paralela, el 2 de septiembre de 2012, el Tribunal de Primera Instancia, Sala Superior de Vega Baja, emitió una Sentencia en la que desestimó sumariamente la reclamación presentada contra M. Cuebas y Bohío por parte del apelado Ángel Soto Ambert. Al mismo resultado llegó el 6 de septiembre de 2012 el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso del apelado Víctor Roldán Flores. Ambos exempleados recurrieron al Tribunal de Apelaciones, en donde se consolidaron los casos, y el 19 de abril de 2013 se emitió una Sentencia en la que se revocaron las determinaciones de los foros primarios. En esa ocasión, el foro apelativo intermedio ex-presó lo siguiente:
Creemos que es necesario que el TPI otorgue oportunidad a los apelantes para que presenten la prueba que entienden controvierte los hechos planteados por los apelados. De sostenerse que en efecto hubo un traspaso de negocio en marcha, es necesario que se examine prueba respecto a la intención de Bohío para retener o no a los empleados de M. Cuebas.(4)
Tanto M. Cuebas como Bohío recurrieron a este Tribunal mediante Recursos de Apelación y nos solicitaron la revocación de la Sentencia emitida por el foro apelativo intermedio. Por tratarse de la misma controversia involucrada en los casos AC-2013-41 y AC-2013-46 que ya habíamos acogido, el 22 de noviembre de 2013 decidimos acoger las apelaciones presentadas por M. Cuebas y Bohío, y consolidamos los cuatro (4) casos.
*109 Todas las partes han comparecido mediante sus respectivos alegatos, por lo que estamos en posición de resolver la controversia ante nuestra consideración sin ulterior trámite.
II
A. Este Tribunal ha reiterado en varias ocasiones que la Moción de Sentencia Sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. Procede en aquellos casos en los que no existen controversias reales y sustanciales en cuanto a los hechos materiales, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho. Oriental Bank v. Perapi et al., 192 DPR 7 (2014); SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 430 (2013); Nieves Díaz v. González Massas, 178 DPR 820, 847 (2010).
En nuestro ordenamiento, el mecanismo de Sentencia Sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, supra. En esencia, esta regla dispone que para emitir una adjudicación de forma sumaria es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, y alguna otra evidencia, surja que no existe controversia real y sustancial en cuanto a ningún hecho esencial y pertinente, y que, como cuestión de derecho, se debe dictar Sentencia Sumaria a favor de la parte promovente. Regla 36.3(e) de Procedimiento Civil de 2009 (32 LPRA Ap. V). Véanse, además: SLG Zapata-Rivera v. J.F. Montalvo, supra, pág. 430; Const. José Carro v. Mun. Dorado, 186 DPR 113, 128 (2012).
Solo procede dictar Sentencia Sumaria cuando surge de manera clara que, ante los hechos materiales no *110 controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Const. José Carro v. Mun. Dorado, supra, pág. 129; Nieves Díaz v. González Massas, supra, pág. 848.
La parte que promueve la Moción de Sentencia Sumaria debe establecer su derecho con claridad y, además, como vimos, debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción. Mun. de Añasco v. ASES et al., 188 DPR 307, 326 (2013); Nieves Díaz v. González Massas, supra, pág. 848; González Aristud v. Hosp. Pavía, 168 DPR 127, 137 (2006). Hemos establecido que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010), citando a J.A. Cuevas Segarra, Tratado de derecho procesal civil, San Juan, Pubs. JTS, 2000, T. I, pág. 609; Mun. de Añasco v. ASES et al., supra, págs. 326-327. La Regla 36.1 de Procedimiento Civil de 2009 se refiere a estos hechos como “esenciales y pertinentes [...]”. 32 LPRAAp. V.
La controversia en cuanto al hecho material tiene que ser real, por lo que cualquier duda es insuficiente para derrotar una solicitud de Sentencia Sumaria. Ramos Pérez v. Univisión, supra, págs. 213-214. La duda debe ser de tal naturaleza que permita “concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes”. (Enfasis en el original). íd., pág. 214.
Por otro lado, la Regla 36 de Procedimiento Civil también regula de manera específica los requisitos de forma que debe cumplir la parte que promueve la Moción de Sentencia Sumaria, así como la parte que se opone a esta. En SLG Zapata-Rivera v. J.F. Montalvo, supra, tuvimos la oportunidad de abundar en cuanto a estos requisitos. En ese caso discutimos que, en cuanto al listado *111 de hechos no controvertidos que la parte promovente debe exponer en su Solicitud, esta tiene que “desglosarlos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada y otra prueba admisible en evidencia que lo apoya”. íd., pág. 432. A su vez, la parte que se opone a la Moción de Sentencia Sumaria está obligada a “citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente”. íd.
Vemos que según nuestro ordenamiento procesal civil, se les exige tanto a quien promueve como al opositor de una Moción de Sentencia Sumaria que cumplan con unos requisitos de forma específicos para que se pueda considerar su Solicitud. El incumplimiento con estos requisitos tiene repercusiones distintas para cada parte. Por un lado, si quien promueve la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. A contrario sensu, si la parte opositora no cumple con los requisitos, el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho. SLG Zapata-Rivera v. J.F. Montalvo, supra. Incluso, si la parte opositora “se aparta de las directrices consignadas [en la regla,] el tribunal podrá no tomar en consideración su intento de impugnación [de los hechos ofrecidos por el promovente]”. íd., pág. 433.
En resumen, en SLG Zapata-Rivera v. J.F. Montalvo, supra, págs. 433-434, establecimos que el ordenamiento procesal civil de nuestra jurisdicción
[...] coloca sobre las partes, quienes conocen de primera mano sus respectivas posiciones, así como la evidencia disponible en el caso, el deber de identificar cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene. Se facilita, por lo tanto, el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las *112 versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación.
En ese sentido, hemos sido enfáticos en que el mecanismo de la Sentencia Sumaria tiene un gran valor en nuestro ordenamiento civil. Ramos Pérez v. Univisión, supra, pág. 214. Correctamente utilizada, la Sentencia Sumaria evita “juicios inútiles, así como los gastos de tiempo y dinero que conlleva para las partes y el tribunal”. Id. Por ello, este Tribunal ha dejado claro que, aunque en el pasado nos referimos a la Sentencia Sumaria como un mecanismo procesal “extraordinario”, ello no significa que su uso esté excluido en algún tipo de pleito. De hecho, en el ámbito de la Moción de Sentencia Sumaria, nuestro ordenamiento “no excluye tipos de casos y realmente puede funcionar en cualquier contexto sustantivo”. P.E. Ortiz Alvarez, Hacia el uso óptimo de la sentencia sumaria, 3 (Núm. 2) Forum 3, 9 (1987). Es decir, nuestra jurisprudencia es clara en que no importa lo complejo que sea un pleito, si de una Moción de Sentencia Sumaria bien fundamentada surge que no existe controversia real en cuanto a los hechos materiales del caso, puede dictarse Sentencia sumariamente.
Finalmente, las Reglas de Procedimiento Civil de 2009 introdujeron un cambio significativo en cuanto a las obligaciones de los tribunales al momento de atender Solicitudes de Sentencia Sumaria. En específico, en la Regla 36.4 se estableció lo siguiente:
Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que *113 están realmente y de buena fe controvertidos, y hasta qué ex-tremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaría limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
A base de las determinaciones realizadas en virtud de esta regla el tribunal dictará los correspondientes remedios, si alguno. (Énfasis suplido). 32 LPRAAp. V.
Como se puede apreciar, esta regla establece que la presentación de una Moción de Sentencia Sumaria tendrá unos efectos importantes en el litigio, independientemente de cómo esta se adjudique. Ahora se les requiere a los jueces que aun cuando denieguen, parcial o totalmente, una Moción de Sentencia Sumaria, determinen los hechos que han quedado incontrovertidos y aquellos que aún están en controversia.(5)
En cuanto a esta nueva exigencia, el tratadista José A. Cuevas Segarra explica lo siguiente:
Esta regla se modificó para disponer que el tribunal [...] está obligado a determinar, mediante resolución, los hechos esenciales y pertinentes sobre los que no existe controversia sustancial, así como aquellos hechos que estén controvertidos, a los fines de que no se tenga[n] que relitigar los hechos que no están en controversia.
Lo importante de esta regla es que el nuevo texto mejorado hace énfasis en el carácter mandatorio de la determinación de los hechos materiales sobre los cuales no hay controversia sustancial y los hechos materiales que están realmente y de buena fe controvertidos. Esta es la única forma de propiciar una revisión adecuada por los foros apelativos. (Énfasis suplido). J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, págs. 1074-1075.
*114 Como vemos, este Tribunal se ha expresado en múltiples ocasiones con relación a los requisitos que deben cumplir las Mociones de Sentencia Sumaria y en cuanto al estándar que deben utilizar los jueces de instancia al momento de atender ese tipo de mociones. Sin embargo, en reducidas ocasiones nos hemos expresado sobre el estándar aplicable al Tribunal de Apelaciones al momento de revisar las determinaciones del foro primario de conceder o denegar Mociones de Sentencia Sumaria. Pasemos entonces a explorar específicamente este aspecto.
B. In limine, este Tribunal ha sido enfático al establecer que, como parte de sus deberes, el foro apelativo intermedio está obligado a resolver los asuntos presentados ante su consideración de forma fundamentada. Ello en aras de que este Tribunal, como foro revisor de última instancia, cuente con un récord completo al momento de ejercer su función apelativa. Maldonado Bermúdez v. Maldonado González, 141 DPR 19 (1996) (Per Curiam).
En cuanto al asunto específico del estándar que debe utilizar el Tribunal de Apelaciones al momento de revisar determinaciones del foro primario en las que se conceden o deniegan Mociones de Sentencia Sumaria, solo nos hemos expresado en una ocasión anterior. En Vera v. Dr. Bravo, 161 DPR 308, 334-335 (2004), pautamos lo siguiente:

El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria.

Sin embargo, al revisar la determinación de primera instancia, el tribunal de apelación está limitado de dos maneras: primero, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación exhibit [s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. Segundo, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los *115 hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. (Enfasis suplido y en el original, y escolios omitidos).
Podemos colegir que desde hace una década fuimos claros en que el Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar una Solicitud de Sentencia Sumaria. Además, debe utilizar los mismos criterios que el ordenamiento le impone al foro primario para analizar si procede o no la desestimación de un pleito por la vía sumaria.(6)
Sin embargo, en Vera v. Dr. Bravo, supra, limitamos el ámbito de discreción del foro apelativo intermedio en casos de revisión de Sentencia Sumaria en dos (2) aspectos. Como vimos, el primer aspecto representa una limitación básica del Derecho Procesal Apelativo en el sentido de que, de ordinario, las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Véase E.L.A. v. Northwestern Selecta, 185 DPR 40, 55 (2012). El segundo limita la facultad del Tribunal de Apelaciones a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, mas no puede adjudicarlos.
Según intimado, los casos consolidados de autos nos permiten atemperar la norma que pautamos hace una década en Vera v. Dr. Bravo, supra, a los cambios que se introdujeron con las Reglas de Procedimiento Civil de 2009. Como en otras ocasiones, procedemos a explorar la jurisprudencia federal en cuanto a este asunto, “ya que nuestra *116 regla de sentencia sumaria utilizó como modelo la Regla 56 de Procedimiento Civil federal [...]”. Ramos Pérez v. Univisión, supra, pág. 213.
En la esfera federal, los Tribunales de Apelaciones para los distintos Circuitos utilizan un estándar similar al que propusimos en Vera v. Dr. Bravo, supra. En ese sentido, al momento de revisar decisiones en las que se aprueba o se deniega una Moción de Sentencia Sumaria, los foros apelativos se encuentran en la misma posición que los tribunales de distrito y utilizan los mismos criterios para evaluarlas. 10A Wright and Miller, Federal Practice and Procedure: Civil 3d See. 2716, pág. 273 (1998). Por ende, la revisión del tribunal apelativo federal es de novo, utilizando la totalidad del récord que estuvo disponible para el tribunal de distrito. Véanse: Tropigas de Puerto Rico v. Certain Underwriters, 637 F.3d 53, 56 (1er Cir. 2011); Clift v. Clift, 210 F.3d 268 (5to Cir. 2000). Además, el Tribunal Supremo federal ha ex-presado que, a nivel apelativo, la revisión de la denegatoria o concesión de una Moción de Sentencia Sumaria se lleva a cabo examinando toda la evidencia de la manera más favorable a favor de la parte que se opuso a la solicitud de sentencia sumaria en el distrito, llevando a cabo todas las inferencias permisibles a su favor. Tropigas de Puerto Rico v. Certain Underwriters, supra.
En el caso de que el Tribunal de Distrito federal deniegue una Moción de Sentencia Sumaria por entender que existen hechos materiales en controversia, el tribunal apelativo solo revisa si el foro primario abusó de su discreción. Véase McMullen v. Meijer, Inc., 337 F.3d 697 (6to Cir. 2003). A contrario sensu, si la denegatoria del tribunal de distrito se dio por fundamentos del Derecho aplicable a la causa de acción, el foro apelativo revisa de novo para verificar si el foro primario aplicó correctamente el Derecho. Id.
Por otro lado, en los casos en que el tribunal de distrito decida que procede una Moción de Sentencia Sumaria, el tribunal apelativo tiene dos (2) vías de revisión. Por un *117 lado, revisa si en realidad no existen hechos materiales en controversia. Por otro, aun si decidiera que no existe controversia en cuanto a los hechos materiales, puede revisar si el tribunal de distrito aplicó correctamente el derecho. Véase Phelan v. Laramie County Community College Bd., 235 F.3d 1243 (10mo Cir. 2000). Ambas vías de revisión se dan de novo.
En este punto, es menester hacer hincapié en una diferencia importante entre nuestra jurisdicción y la federal en cuanto a las reglas procesales que rigen la figura de la Moción de Sentencia Sumaria. Como vimos, nuestra citada Regla 36.4 de Procedimiento Civil le exige a los tribunales que, independientemente de cómo resuelvan una Moción de Sentencia Sumaria, emitan una lista de los hechos que encontró que no están en controversia en el pleito y los que sí lo están. Esta exigencia no existe en el ámbito federal, ya que la Regla 56(g) de Procedimiento Civil federal establece lo siguiente:
(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested in the motion, it may enter an order stating any material fact —including and item of damages or other relief— that is not genuinely in dispute and treating that fact as established in the case. (Enfasis suplido). 28 USCAFRCP R. 56.
Como podemos apreciar, esta regla federal le permite a los tribunales emitir una Orden que exponga los hechos materiales que están incontrovertidos en las instancias en que denieguen Mociones de Sentencia Sumaria. A diferencia de nuestra Regla 36.4 de Procedimiento Civil, supra, queda a la discreción del juez de distrito emitir o no esa Orden.
Con este marco de referencia presente, estamos en posición de establecer el estándar específico que debe utilizar el Tribunal de Apelaciones en nuestra jurisdicción al momento de revisar denegatorias o concesiones de Mociones de Sentencia Sumaria, a la luz de la jurisprudencia *118 revisada y las Reglas de Procedimiento Civil aprobadas en 2009.
Primero, reafirmamos lo que establecimos en Vera v. Dr. Bravo, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, supra, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es de novo y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en SLG Zapata-Rivera v. J.F. Montalvo, supra.
Tercero, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
*119 Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
Este estándar atempera lo que habíamos establecido hace una década en Vera v. Dr. Bravo, supra, a las exigencias de las nuevas Reglas de Procedimiento Civil. Específicamente, aplicar el requisito de la Regla 36.4 de Procedimiento Civil, supra, para exigir que el Tribunal de Apelaciones exprese concretamente cuáles hechos materiales están en controversia adelanta dos (2) propósitos.
Primero, permite que las razones de política pública que inspiraron la Regla 36.4 de Procedimiento Civil, supra, se mantengan a nivel del foro apelativo intermedio ya que, como vimos, en nuestro ordenamiento la presentación de una Moción de Sentencia Sumaria tiene el efecto de establecer los hechos que están controvertidos y aquellos que no lo están, independientemente del resultado de la Moción de Sentencia Sumaria. Si se permite que el Tribunal de Apelaciones revoque Sentencias emitidas sumariamente bajo un fundamento escueto de que “existen hechos materiales en controversia”, se daría al traste con lo codificado en la Regla 36.4 de Procedimiento Civil, supra, y las partes quedarían en la misma posición que estaban previo a la presentación de la moción de sentencia sumaria, atrasando así el litigio de manera injustificada. Es decir, las partes volverían al día uno (1) del litigio —con todos los asuntos en controversia— a pesar de haber gastado tiempo y recursos en la presentación de Solicitudes de Sentencia Sumaria. Segundo, exigirle al Tribunal de Apelaciones que cumpla con la Regla 36.4 de Procedimiento Civil, supra, ayuda también en la responsabilidad apelativa de este Tribunal Supremo al momento *120 de revisar los fundamentos que movieron al foro apelativo intermedio a revocar una Sentencia Sumaria.(7)
Con este estándar presente, pasemos a examinar si el Tribunal de Apelaciones erró en los casos consolidados de epígrafe al revocar las Sentencia Sumaria emitidas por varias salas del Tribunal de Primera Instancia.
III
De los autos podemos constatar que dos (2) Paneles del Tribunal de Apelaciones emitieron Sentencias en las que revocaron varias Sentencia Sumaria emitidas por el foro primario en los casos consolidados de epígrafe.
En la primera de las Sentencias emitidas por el foro apelativo intermedio en el Caso KLAN201300130, se concluyó que los casos de autos eran complejos, por lo que resultaba “sumamente difícil que el tribunal pueda reunir ante sí toda la verdad de los hechos a través de documentos”.(8) Por ello, concluyó que ameritaba un juicio en su fondo ya que al ser un caso complejo, “no [era] aconsejable resolver sumariamente ese tipo de casos”.(9)
El razonamiento del Tribunal de Apelaciones fue errado. De entrada, desde Ramos Pérez v. Univisión, supra, hemos enfatizado que el mero hecho de que un pleito involucre controversias complejas no impide que este se pueda resol *121 ver sumariamente si en realidad no existen hechos materiales en controversia.
Por otro lado, el foro apelativo intermedio también erró al revocar la determinación del foro primario ya que no expresó cuáles hechos materiales, si algunos, encontró que estaban en controversia. Aun si asumiéramos que el Tribunal de Apelaciones dio por no controvertidos los hechos materiales del caso, como sea no expresó si concluyó que el foro primario aplicó incorrectamente el Derecho al resolver sumariamente los casos involucrados. Como vimos, el foro apelativo intermedio se circunscribió a revocar al Tribunal de Primera Instancia porque el caso era complejo y que no era “aconsejable” resolver sumariamente. Este proceder fue errado al no cumplir con nuestra normativa de revisión de Sentencia Sumaria y pasar por alto los requisitos de la Regla 36.4 de Procedimiento Civil, supra.
La segunda Sentencia emitida por el foro apelativo intermedio en el Caso KLAN201201620 también padece de estos errores. En esa Sentencia, el foro apelativo intermedio expresó que “de la información contenida en las mociones de oposición presentadas por los apelantes surge la existencia de controversia sobre varios hechos esenciales”.(10) No obstante, el Tribunal de Apelaciones no expresó cuáles hechos específicos encontró controvertidos. Como vimos, este proceder es contrario al texto claro la Regla 36.4 de Procedimiento Civil, supra, ya que deja a las partes en un estado de dudas en cuanto a cuáles hechos están realmente en controversia. A pesar de que el foro primario llevó a cabo un estudio de la evidencia disponible y concluyó que los hechos materiales del pleito estaban incontrovertidos, el Tribunal de Apelaciones se limitó a revocar bajo el fundamento escueto de que “existen controversias de hechos”. Como vimos, esa actuación por parte del foro apelativo intermedio es improcedente.
*122 Pero más preocupante aún resulta la siguiente expresión realizada por ese tribunal: “Creemos que es necesario que el TPI otorgue oportunidad [sic] a los apelantes para que presenten la prueba que entienden controvierte los hechos planteados por los apelados”.(11) Esta expresión es una negación del mecanismo de Sentencia Sumaria establecido en la Regla 36 de Procedimiento Civil, supra. La parte que se opone a una Moción de Sentencia Sumaria tiene el deber de presentar una Oposición a la solicitud presentada y, de acuerdo con los requisitos de forma que exige la citada Regla 36 de Procedimiento Civil, traer a la atención del Tribunal la evidencia que demuestra que existen hechos materiales en controversia. La etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil, supra.(12)
En fin, por las razones discutidas anteriormente, concluimos que ambos Paneles del Tribunal de Apelaciones erraron en su revisión de las sentencias sumarias emitidas *123 por varias salas del Tribunal de Primera Instancia. Por ende, devolvemos los casos de autos al foro apelativo intermedio para que, a la luz del estándar establecido en esta Opinión, analice si procedía desestimar sumariamente las Querellas presentadas por los apelados de epígrafe. Con este proceder, las partes que resulten perdidosas en el foro apelativo tendrán la oportunidad de recurrir nuevamente a este Forom si entienden que el Tribunal de Apelaciones erró al aplicar a los casos de autos la norma que hoy establecemos.
IV
Por los fundamentos antes expuestos, se revocan las Sentencias apeladas. Se devuelven los casos consolidados de autos a los respectivos Paneles del Tribunal de Apelaciones para que, según la norma establecida en esta Opinión, revisen si procedían las sentencias sumarias emitidas por varias salas del Tribunal de Primera Instancia en los casos consolidados de epígrafe.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la que se unió la Jueza Presidenta Señora Fiol Matta. El Juez Asociado Señor Estrella Martínez emitió una opinión disidente. La Jueza Asociada Oronoz Rodríguez disintió y emitió la expresión siguiente:
Disiento de la Opinión mayoritaria por entender que las Sentencias emitidas por el foro intermedio en los casos consolidados y atendidos por este Tribunal son esencialmente correctas. Asimismo, cumplen con las exigencias requeridas para sustentar su dictamen conforme con la Regla 10(a) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Dicha Regla es clara al disponer que las determinaciones del Tribunal de Apelaciones deben estar fundamentadas e incluir una relación de hechos, una exposición y un análisis de los asuntos planteados o conclusiones de derecho. Id. En consecuencia, considero que no es necesario ni propicio extender los *124 requerimientos de la Regla 36.4 de Procedimiento Civil al Tribunal de Apelaciones, 32 LPRA Ap. V. Ante ello, confirmaría las Sentencias del Tribunal de Apelaciones y devolvería los casos al Tribunal de Primera Instancia para que se dilucidaran las controversias en un juicio plenario.

 En específico, la Carta de Intención estableció lo siguiente:
“This letter will outline the basic terms and conditions of our proposal under Bohio International Corporation, or any of its affiliates, (‘the Buyer’) would purchase from M. Cuebas, Inc. and/or its shareholder(s) (‘the Seller’) the property and assets more fully described below (the ‘Property’). This sale is being negotiated upon Seller’s unequivocal decision to close its operations”. Apéndice de la Apelación AC-2014-0041, Pieza 1, págs. 451-457.

 Apéndice 1 de la Apelación de Bohío International Corp., AC-2013-0046, págs. 28-29.

 Acogimos los recursos de M. Cuebas y Bohío como apelaciones ya que existen decisiones conflictivas entre los paneles del Tribunal de Apelaciones en los casos de epígrafe. Específicamente, el 21 de marzo de 2013 en Omar Martínez Meléndez v. M. Cuebas, et al., KLAN201202035, un Panel del foro apelativo intermedio compuesto por las Juezas Hon. Emmalind García García y Hon. Aleida Varona Méndez, y el Juez Hon. Gerardo Flores Flores, emitió una Sentencia en la que se confirmó la desestimación sumaria de una Querella ocasionada por los mismos hechos de los seis (6) casos consolidados de epígrafe.

 Apéndice 2 de la Apelación AC-2013-0070, pág. 19.

 La Regla 42.2 de Procedimiento Civil, 32 LPRAAp. V, hace referencia a esta obligación al establecer, en lo pertinente lo siguiente:
“En los casos en que se deniegue total o parcialmente una moción de sentencia sumaria, el tribunal determinará los hechos en conformidad con la Regla 36.4 de este apéndice”.

 Las opiniones disidentes parecen hacer caso omiso a este precedente básico en cuanto a que el Tribunal de Apelaciones y el Tribunal de Primera Instancia están atados por los mismos criterios al momento de revisar Solicitudes de Sentencia Sumaria. Ambas disidencias se enfocan en que estos foros tienen naturalezas distintas, ya que el foro apelativo intermedio no puede recibir prueba. Sin embargo, este asunto ya fue atendido en Vera v. Dr. Bravo, 161 DPR 308 (2004). En ese caso expusimos claramente que, al revisar Solicitudes de Sentencia Sumaria, el foro apelativo intermedio no podía recibir prueba que no fue presentada en el foro primario y no puede adjudicar hechos. En ese sentido, las preocupaciones de la disidencia en cuanto a la naturaleza distinta del Tribunal de Apelaciones fueron atendidas hace una década.

 Este Tribunal nunca ha concluido que cuando una regla procesal hace referencia al término “tribunal” se refiere únicamente al foro de instancia. En De Jesús Viñas v. González Lugo, 170 DPR 499, 511 (2007), decidimos que en el contexto específico de la entonces vigente Regla 49.2 de Procedimiento Civil, la palabra “tribunal” se refiere al foro primario y la frase “tribunal apelativo o revisor” se refiere al Tribunal de Apelaciones. Ello, ya que la Regla 49.2 hacía referencia a ambos tribunales. Eso no ocurre con la actual Regla 36.4, en la que no se diferencia entre los dos tribunales. Además, en ese caso expresamos que “no [...] todas las figuras incorporadas y reguladas mediante las Reglas de Procedimiento Civil se encuentran disponibles en los procesos ante el Tribunal de Apelaciones [...]”. íd., pág. 512. Ciertamente, la revisión de una sentencia sumaria, a diferencia de la moción de relevo de sentencia que atendimos en De Jesús Viñas, supra, es una figura procesal disponible en el Tribunal de Apelaciones. Vera v. Dr. Bravo, supra.

 Apéndice 1 de la Apelación AC-2013-046, pág. 28.

 íd.

 Apéndice de la Apelación AC-2013-0070, pág. 19.

 íd.

 Las opiniones disidentes concluyen que los paneles del Tribunal de Apelaciones cumplieron con su encomienda, ya que entienden que ambos paneles expresaron cuáles hechos estaban en controversia. Por ejemplo, la Juez Asociada Señora Rodríguez Rodríguez expresa que el hecho en controversia es si “coexistía [una] ‘similaridad sustancial en la operación de la empresa y una continuidad en la identidad de la empresa antes y después del cambio corporativo’ ”. Opinión disidente de la Juez Asociada Señora Rodríguez Rodríguez, pág. 130. Por su parte, el Juez Asociado Señor Estrella Martínez expresa que el hecho en controversia es si “en efecto hubo un cierre de operaciones de la corporación adquirida que impida la aplicación de la doctrina de patrono sucesor”. Opinión del Juez Asociado Señor Estrella Martínez, pág. 145. Sin embargo, ninguno identifica alguna pieza de evidencia que conste en autos y que demuestre, en efecto, la existencia de una controversia en cuanto a ese asunto.
El problema con estas expresiones de la disidencia es que se reducen a repetir una de las alegaciones de los empleados recurridos de epígrafe, a saber, si en estos casos aplica la doctrina de patrono sucesor. Es decir, un tribunal no se puede limitar a encontrar una “controversia de hechos materiales” con meramente repetir la controversia del caso. Nuestro ordenamiento procesal exige que los litigantes coloquen al tribunal en posición de concluir que existe tal controversia a través de evidencia admisible, no meramente mediante la repetición de las alegaciones de la Demanda.