# United States Court of Appeals
## For the First Circuit

No. 11-1665

ARMANDO GOMEZ,

Plaintiff, Appellant,

v.

THE STOP & SHOP SUPERMARKET CO.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Howard, Selya and Lipez,
Circuit Judges.

Thomas P. Smith and Caffrey & Smith, P.C. on brief for
appellant.
Mark C. McCrystal and Cetrulo & Capone LLP on brief for
appellee.

March 2, 2012

**SELYA**, **Circuit Judge**. Plaintiff-appellant Armando Gomez, a Colombian national, sued defendant-appellee Stop & Shop Supermarket Co., after he slipped and fell while shopping. The district court entered summary judgment for the defendant. After careful consideration, we affirm.

The facts are not complicated. On June 19, 2007, the plaintiff entered the defendant's supermarket in North Andover, Massachusetts. While walking through the greeting card aisle, he felt a strange sensation — as though he was unable to lift his right foot — which caused him to lose his balance and topple to the floor. His wife, who was browsing nearby, noticed skid marks close to the site of the fall; but neither she nor anyone else witnessed the incident, observed anything wrong with the floor, or saw any foreign substance there. The plaintiff was transported to a nearby hospital. He learned that he had fractured his hip and sustained other injuries.

In due season, the plaintiff repaired to the federal district court, invoked diversity jurisdiction,[1] and sued the defendant. He contended that a foreign substance on the floor caused his right foot to stick and provoked his fall. As a result, he accused the defendant of negligently maintaining the premises.

---

[1] Diversity in this case is based upon the provisions of 28 U.S.C. § 1332(a)(2), which provides that the district courts shall have original jurisdiction over civil actions between "citizens of a State and citizens or subjects of a foreign state."

The defendant denied the allegations of negligence. Discovery ensued. Upon its completion, the defendant moved for summary judgment, and the plaintiff opposed the motion.

The parties consented to proceed before a magistrate judge. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Upon consideration of the defendant's motion, the judge concluded that liability could not attach in the absence of facts indicating that the defendant reasonably should have foreseen the existence of a dangerous condition. Because the plaintiff had not adduced such a factual predicate, there was no trialworthy issue as to liability. Consequently, the judge entered summary judgment in the defendant's favor. This timely appeal followed.

A trial court's entry of summary judgment engenders de novo review. Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). This process entails taking all the facts in the light most flattering to the nonmoving party, resolving any evidentiary conflicts in that party's favor, and drawing all reasonable inferences therefrom to his behoof. See Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011). We will affirm the lower court's decision only if the record reveals no genuine dispute as to any material fact and demonstrates that the moving party is entitled to judgment as a matter of law. Fithian v. Reed, 204 F.3d 306, 308 (1st Cir. 2000); see Fed. R. Civ. P. 56(a).

"This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). The factual conflicts upon which he relies must be both genuine and material. See Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011); Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). "Conclusory allegations and rank speculation, even if couched in pejorative language, will not suffice to defeat a properly supported summary judgment motion." Hannon, 645 F.3d at 48 (citing Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010)).

In this diversity case, Massachusetts law supplies the substantive rules of decision. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Within this architecture, the plaintiff advances two assignments of error. First, he maintains that he adduced sufficient evidence of negligence to warrant a trial. Second, he insists that the defendant failed to preserve potentially relevant evidence, which failure gives rise to an inference that should have precluded the entry of summary judgment. Neither proposition withstands scrutiny.

We begin with the sufficiency of the evidence. The defendant operates a chain of self-service supermarkets. Under Massachusetts law, a plaintiff seeking to recover against a shopkeeper for a fall on the premises must prove both that a dangerous condition existed and that the shopkeeper had notice,

-4-

actual or constructive, of the dangerous condition but took no corrective action. See Sheehan v. Roche Bros. Supermkts., Inc., 863 N.E.2d 1276, 1280-81 (Mass. 2007); Oliveri v. MBTA, 292 N.E.2d 863, 864-65 (Mass. 1973). This is a conventional approach to premises liability, see, e.g., Guertin v. Antonelli, 171 A.2d 449, 450-51 (R.I. 1961), and Massachusetts courts have added a gloss in the form of the so-called "mode of operation" approach applicable to self-service stores. See, e.g., Sheehan, 863 N.E.2d at 1284. The rationale for this refinement is the increased spillage and breakage that may occur when customers handle items without employee assistance. Id. at 1282.

The mode of operation approach dictates that "where an owner's chosen mode of operation makes it reasonably foreseeable that a dangerous condition will occur, a store owner [can] be held liable for injuries to an invitee if the plaintiff proves that the store owner failed to take all reasonable precautions necessary to protect invitees from these foreseeable dangerous conditions." Id. at 1283. Nevertheless, the mode of operation approach does not displace the notice requirement that accompanies traditional claims of premises liability. Id. Rather, the standard for meeting that requirement is relaxed. See id. In a mode of operation case, the notice requirement is satisfied if the plaintiff establishes that the "injury was attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's

self-service mode of operation" and that the owner "failed to take reasonable measures commensurate with the risks involved with [the] self-service mode of operation." Id.

The plaintiff has failed to satisfy these requirements. To prevail, he would have to show both a dangerous condition and the reasonable foreseeability of that condition. Here, however, no factfinder could rationally determine that a dangerous condition existed in the greeting card aisle of the defendant's market at the time of the plaintiff's fall.

In support of his claim that there is a genuine issue of material fact as to the existence of a dangerous condition, the plaintiff points to his testimony that he felt something strange on the floor, that he could not lift his right foot, and that he then "fell down in the most spectacular way." He asserts that there must have been a sticky substance on the floor and that this substance must have caused his fall. This assertion, however, is woven entirely out of gossamer strands of speculation and surmise.

Assumptions are not a substitute for evidence. In this instance, the plaintiff's assertion piles inference upon inference until the entire pyramid topples of its own weight. People fall for a wide variety of reasons, and assuming the cause of a fall, without any competent evidence, impermissibly elevates assumption over proof.

To be sure, the plaintiff's suggested inference — that there must have been something sticky on the floor — is a possible explanation. But a possible explanation is not a probable one. Liability in a premises case requires proof that a dangerous condition existed at the relevant time and place. No such proof can be gleaned from the plaintiff's account. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (discussing, in the motion to dismiss context, "the line between possibility and plausibility"). Therefore, that account is without probative force and is insufficient to create a genuine dispute about a material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)).

The plaintiff's position is not bolstered by the other evidence in the record. His sticky substance theory is undermined by his own statement that he did not see anything unusual in the greeting card aisle. His wife noticed only skid marks — no foreign substances — at the site of the fall. The plaintiff himself noticed nothing on the floor either before or after his fall. In a similar vein, the defendant's employees testified that they had observed no foreign substance in the greeting card aisle. By the same token, no one observed any residue of any foreign substance on the sole of the plaintiff's shoe.

In a nutshell, there is simply no evidentiary support for the plaintiff's naked hypothesis that a foreign substance probably caused his inability to lift his right foot. This sort of purely conjectural assumption, drawn from an empty record, is insufficient to propel a cause of action beyond the summary judgment stage. See, e.g., Tropigas, 637 F.3d at 58; see also Zhizhen Fu v. Swansea Lounge, Inc., No. 09-388, slip op. at 1 (Mass. App. Ct. Feb. 1, 2010) (affirming summary judgment when plaintiff assumed that she slipped on grease, but nobody saw a foreign substance before or after the fall).

To say more on this subject would be supererogatory. Because a rational jury could not find that a dangerous condition existed at the time and place of the plaintiff's fall, the lower court appropriately jettisoned the claim.[2] See McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (explaining that a party opposing summary judgment cannot rely on the absence of evidence, but must point to specific facts that demonstrate the existence of an authentic dispute).

This brings us to the plaintiff's contention that the defendant either destroyed or intentionally failed to gather evidence of its negligence. He strives to convince us that this

---

[2] We need not reach the question of foreseeability. It is an a fortiori proposition that a plaintiff who cannot make a sufficient showing that a foreign substance existed on the defendant's premises cannot satisfy the foreseeability requirement for premises liability under the mode of operation approach.

conduct should have led the lower court to send his case to a jury. We are not persuaded.

The plaintiff's support for this suggestion is thin. To begin, he argues that a videotape of his accident must have existed, that the defendant must have destroyed it, and that, therefore, the defendant is chargeable with spoliation of evidence.

The theoretical underpinnings for the spoliation doctrine are solid. "We have held with some regularity that a trier of fact may (but need not) infer from a party's obliteration of [evidence] relevant to a litigated issue that the contents of the [evidence] were unfavorable to that party." Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998). But cases are not decided on theory alone. Before an inference of spoliation may be drawn, its proponent must show at a bare minimum that the opposing party had notice of a potential claim and of the relevance to that claim of the destroyed evidence. See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1158-59 (1st Cir. 1996). And there is an even more rudimentary requirement: the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved). Tri-County Motors, Inc. v. Am. Suzuki Motor Corp., 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007).

The plaintiff falls woefully short of meeting these requirements. He relies on three facts to support his contention that the defendant destroyed a videotape of the accident: the

defendant had a store security system that employed a series of cameras; the defendant had exclusive control over that system; and no videotape was produced during discovery. These facts are true but, without more, they are inadequate to show spoliation.

We canvass the pertinent evidence. A cashier employed by the defendant testified that there are cameras in the store that cover "a good majority" of the selling floor. Although this testimony supports a conclusion that the store had cameras focused on some areas of the market, it does not support a conclusion (or even a reasonable inference) that a security camera filmed the incident that transpired in the greeting card aisle. The absence of any such evidence is fatal to the plaintiff's hypothesis. See Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

The conclusion that no videotape ever existed is buttressed by the record as a whole. The cashier testified that she had never seen or heard of a videotape of the accident. An assistant store manager testified that the security cameras did not surveil the greeting card aisle. Finally, a security supervisor confirmed that the greeting card aisle is usually not protected by camera surveillance. He added that while it would be possible for

-10-

surveillance to occur there, an employee would have needed to specially position a camera aimed at that specific location. The record contains no evidence that any such positioning occurred on or near the date of the plaintiff's fall.

It is a proposition too elementary to require citation of authority that when there is no evidence to begin with, a claim of spoliation will not lie. This is such a case.

The plaintiff's alternate theory of spoliation is that the defendant's own policy required its employees to take photographs of accidents, and that the failure to do so here evidences spoliation. This is a theory not premised on the destruction of evidence but, rather, on the failure to collect evidence. As such, the theory is novel — and the plaintiff presents it without the benefit of any on-point authority.

We need not reach the novel question of whether a failure to collect evidence may, in certain circumstances, be tantamount to spoliation. The plaintiff grounds this claim on the testimony of the assistant store manager, who stated that, as part of his training, the defendant taught him to compile a full report after an accident, talk to witnesses, take pictures, and secure any relevant videotape. This training, the plaintiff posits, shows that the defendant has a policy of evidence collection. Failure to adhere to that policy, he says, warrants an inference of wrongdoing.

The short answer to the plaintiff's claim is that there is no proof of a particular policy or custom. The manager's testimony only provides evidence that he was trained on best practices. The testimony cannot reasonably be understood to show the existence of an established store-wide policy or custom requiring employees to take a series of specific steps when an accident occurs. In these circumstances, the plaintiff has no plausible claim of spoliation.

We need go no further. For the reasons elucidated above, we uphold the judgment of the district court.

**Affirmed**.