# United States Court of Appeals
## For the First Circuit

No. 16-1765

OAHN NGUYEN CHUNG, Individually and as Administratrix
of the Estate of LISA TAM CHUNG, and LIEM CHUNG,

Plaintiffs, Appellants,

OLLIE DAILY, LOREN DAILY and PATRICIA DAILY,

Plaintiffs,

v.

STUDENTCITY.COM, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

Joseph P. Musacchio, with whom Anthony Tarricone and Kreindler and Kreindler LLP were on brief, for appellants.
Rodney E. Gould, with whom Robert C. Mueller and Smith Duggan Buell & Rufo LLP were on brief, for appellee.

April 14, 2017

**SELYA**, **Circuit Judge**.  District courts have authority to enter summary judgment on grounds not raised by the parties.  That authority, though, is far from unbridled.  Here, the district court — with the acquiescence of the parties — limited pretrial discovery to specific issues.  It later entered summary judgment on a completely different issue — an issue not briefed and on which discovery had not been allowed.  Concluding, as we do, that the district court's shift in focus exceeded its authority, we vacate the judgment and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

We rehearse the facts in the light most amenable to the parties opposing summary judgment (here, the plaintiffs).  See Jones v. Secord, 684 F.3d 1, 3 (1st Cir. 2012).  StudentCity.com, Inc. (StudentCity) is a Delaware corporation that maintains its principal place of business in Massachusetts.  It sells vacation packages to students, including those traveling for spring break or to celebrate graduations.

In the fall of 2007, Lisa Tam Chung and Loren Daily were high-school seniors in Grand Prairie, Texas.  A StudentCity representative contacted Loren to promote the firm's wares and piqued her curiosity about booking a graduation trip.  Once a critical mass of students had expressed interest about such a trip, the StudentCity representative held an informational meeting.  The

representative assured the assemblage (including several parents) that StudentCity staff attend all events and that participating students would not be permitted to go anywhere unaccompanied. She also distributed promotional materials that stated in pertinent part:

- StudentCity will provide "[o]n site staff at all scheduled events — beginning to end."

- StudentCity "staffs all scheduled events from beginning to end."

- StudentCity maintains "the largest staff-to-student ratio and our 24-hour staff is there to give you the peace of mind you need."

- StudentCity staff will be present "to assure that everyone is having a great and responsible time."

Loren's parents met with the StudentCity representative and read the written materials. Lisa relayed StudentCity's representations to her parents, who had limited English proficiency. With the blessing of both families, the girls purchased vacation packages for a June 2008 trip to Cancún, Mexico, adding an optional snorkeling excursion.

The snorkeling excursion took place on June 7, when the participants boarded the SS Sea Star, a catamaran owned and operated by Servicios Maritimos y Acua del Caribe SA de C.V. (SMA). A StudentCity staff member transported Lisa and Loren to the Sea

Star, a vessel approved to carry eighty passengers and three crew members for this kind of outing.[1]  On the day in question, however, it carried at least 120 StudentCity travelers and no fewer than 210 persons in total.  No on-duty StudentCity representative was on board.

The snorkeling trip had a tragic ending: the Sea Star hit a coral reef and began to take on water, yet the crew provided no assistance to the passengers (indeed, some crew members deserted ship).  Acting on their own, Lisa and Loren donned life preservers and tried to reach safety by grabbing a rope that extended between the Sea Star and a small private vessel.  Their efforts failed and they were pulled under the water.  Loren suffered serious injuries, but survived; Lisa was pronounced brain dead at a local hospital and died on June 10, 2008.

Following an investigation, the harbormaster concluded that the "concentration of passengers in the boat" caused a "considerable imbalance," which most likely led to the Sea Star's collision with the coral reef.  Similarly, the Mexican government attributed the accident to the catamaran's "imprudent overload" and the "negligent performance" of the captain.

---

[1] StudentCity offered some evidence that the catamaran's maximum capacity was 250 passengers (though not for voyages to the coral reef).  At the summary judgment stage, however, we are constrained to view disputed facts in the plaintiffs' favor.  See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

A civil action ensued. Although this suit originally had a wider compass, the only claim that is still velivolant is the claim for Lisa's wrongful death — a claim brought by her parents, Oahn Nguyen Chung (individually and in her capacity as administratrix of Lisa's estate) and Liem Chung.[2] As to this claim, StudentCity moved to dismiss or, in the alternative, for summary judgment. See Fed. R. Civ. P. 12(b)(6), 56(a). The district court denied the motion to dismiss, but reserved decision on summary judgment. See Chung v. StudentCity.com, Inc. (Chung I), No. 10-10943, 2013 WL 6528516, at *2 (D. Mass. Dec. 12, 2013). It reasoned that

> [d]iscovery has not yet begun in this matter. . . . Much of the factual information plaintiffs desire is in defendant's control and can be turned over expeditiously. That information may affect the determination of whether defendant voluntarily undertook a duty to ensure the safety of trip participants, and whether defendant knew or should have known about [SMA]'s dubious prior safety record, if indeed it exists.

Id.

After limited discovery — a circumstance to which we shortly shall return — the district court granted summary judgment in favor of StudentCity. With respect to one of the issues to

---

[2] The remaining claims, including claims brought by and on behalf of Loren, were consigned to arbitration pursuant to the terms of StudentCity's standard customer agreement. See Chung v. StudentCity.com, Inc., No. 10-10943, 2013 WL 504757, at *4 (D. Mass. Feb. 12, 2013). That ruling has not been appealed.

which discovery had been allowed, the court concluded that there was "no evidence to suggest that the steps StudentCity took in selecting its snorkeling excursion vendor were unreasonable under the circumstances."[3]  With respect to the other issue, the court concluded that "StudentCity voluntarily assumed a duty to generally supervise tour participants during all StudentCity-organized/scheduled events, including the June 7, 2008 snorkeling excursion."  Even so, the court ruled that the negligent supervision "claim fails on causation" because "Lisa's death resulted not from inadequate supervision by StudentCity staff, but rather from the boat accident caused by the overloading of the Sea Star and its negligent operation by [SMA]."  This timely appeal followed.

## II.  ANALYSIS

We review a district court's entry of summary judgment de novo.  See Gomez v. Stop & Shop Supermkt. Co., 670 F.3d 395, 396 (1st Cir. 2012).  In conducting this appraisal, we take "all the facts in the light most flattering to the nonmoving party, resolving any evidentiary conflicts in that party's favor, and drawing all reasonable inferences therefrom to his behoof."  Id.  "We will affirm only if the record discloses no genuine issue as

---

[3] This portion of the district court's summary judgment ruling has not been challenged on appeal, and we treat the "negligent selection" claim as foreclosed.

to any material fact and the moving party is entitled to judgment as a matter of law." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). An issue is genuine if a reasonable factfinder could resolve it in favor of either party. See id. An issue is material if it holds the potential to change the outcome of the suit. See id.

Jurisdiction in this case is predicated on diversity of citizenship and the existence of a controversy in the requisite amount. See 28 U.S.C. § 1332(a). In a diversity case, state law supplies the substantive rules of decision. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014). The parties agree that, consistent with the choice-of-law provision in the customer agreement, Massachusetts law controls here. We have said that "a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement" as to which state law applies. Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991). Accordingly, we look to Massachusetts law.

Under Massachusetts law, wrongful death is a species of negligence, see Mass. Gen. Laws ch. 229, § 2 (imposing liability for damages against "[a] person who . . . by his negligence causes the death of a person"), and as such demands proof of four elements: "that the defendant owed the plaintiff a duty of

reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage," Jupin v. Kask, 849 N.E.2d 829, 834-35 (Mass. 2006).

The existence vel non of a duty presents "a question of law to be resolved by the judge." Cottam v. CVS Pharmacy, 764 N.E.2d 814, 819 (Mass. 2002). Massachusetts courts recognize that a duty may be voluntarily assumed and, if it is, "must be performed with due care." Id. at 821 (quoting Mullins v. Pine Manor Coll., 449 N.E.2d 331, 336 (Mass. 1983)). Causation, by contrast, generally presents a question of fact within "the special province of the jury." Jupin, 849 N.E.2d at 835. It is thus apparent that duty and causation are separate and distinct elements of negligence and negligence-like actions.

Here, the plaintiffs' principal argument is that the district court erred in premising its summary judgment decision on the perceived absence of causation — an issue that was neither argued by StudentCity nor open to discovery. StudentCity demurs: it asserts that the issue of causation was squarely raised at summary judgment. The record, though, belies this assertion. We start there.

StudentCity posits that its motion papers made clear that neither it nor its agents were

part of the Sea Star's crew, and had no responsibility for boarding passengers, determining where passengers were to be positioned, navigating the vessel, providing safety equipment on the vessel, controlling or limiting the number of passengers, or otherwise instructing the passengers or the StudentCity participants on the Sea Star's rules and regulations.

In context, however, it is pellucid that these arguments were advanced not in connection with any issue of causation, but to support StudentCity's lack-of-duty theory. Its summary judgment briefing does not in any way, shape, or form link these arguments to causation. Instead, the arguments — to use StudentCity's own term — related to its "responsibility," and "responsibility" is synonymous with "duty." See Responsibility, Oxford English Dictionary (3d ed. 2010), http://www.oed.com/view/Entry/163862 (defining responsibility as "[t]he state or fact of being in charge of or of having a duty towards a person or thing").

Nor is StudentCity's assertion made more plausible by either of two additional statements in its summary judgment papers. It notes that, in its motion, it alleged that "[t]our operators such as StudentCity are simply not liable for the alleged negligence of third-party service suppliers, . . . regardless of the theory advanced." This broad statement is of no help to StudentCity, though, because it ignores the district court's holding that, in this instance, StudentCity voluntarily assumed a duty to supervise. Once assumed, that duty had to be performed with due care. See Cottam, 764 N.E.2d at 821.

StudentCity also points to a sentence in the memorandum accompanying its summary judgment motion, to the effect that "StudentCity owed no such duty [the breach of] which was the proximate cause of Lisa Tam Chung's death." This statement plainly went to duty, not causation, as a basis for summary judgment. Consequently, we conclude, without serious question, that StudentCity never raised causation as a ground for summary judgment.

Because causation was not placed in issue, we deem the district court's decision to base its ruling on that ground to be "a species of sua sponte summary judgment." Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 28 (1st Cir. 1996). While a district court may in rare circumstances enter summary judgment on a ground not raised by any party, see Fed. R. Civ. P. 56(f)(2), that power should be exercised sparingly and "with great circumspection," Stella v. Town of Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993). The "spontaneous nature" of the district court's action, though, does not affect our de novo standard of review. Berkovitz, 89 F.3d at 30; accord John G. Alden, Inc. of Mass. v. John G. Alden Ins. Agency of Fla., Inc., 389 F.3d 21, 24 (1st Cir. 2004).

When considering the boundaries of a district court's authority to grant summary judgment sua sponte, we have regularly imposed two constraints: first, discovery must be "sufficiently advanced" to afford the parties "a reasonable opportunity to glean

- 10 -

the material facts"; and second, the "targeted party" must have been given "notice and a chance to present its evidence on the essential elements of the claim or defense." Berkovitz, 89 F.3d at 29; accord Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 363 (1st Cir. 2016); Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010). These conditions afford important protections: access to discovery ensures that a litigant has an opportunity to learn the relevant facts, and notice that an issue is in play ensures that a litigant has an opportunity to put his best foot forward. Both safeguards are applicable where, as here, the district court grants summary judgment on a ground not previously raised. See Block Island Fishing, 844 F.3d at 363.

In applying these tenets, discovery is deemed to be sufficiently advanced once it has "proceeded to the point where the parties underst[an]d the material facts." Sanchez v. Triple-S Mgmt., Corp., 492 F.3d 1, 7 (1st Cir. 2007) (quoting Penobscot Indian Nation v. Key Bank of Me., 112 F.3d 538, 562 (1st Cir. 1997)). This means, at a minimum, that there must be a reasonable opportunity to conduct discovery on a particular issue. Here, the plaintiffs were not given the chance to conduct any discovery at all on the causation issue. The district court's order reserving decision on the summary judgment motion, fairly read, contemplated discovery on only two factual issues: the existence of a duty to

- 11 -

supervise (that is "whether defendant voluntarily undertook a duty to ensure the safety of trip participants") and whether StudentCity breached its duty to investigate SMA (that is, "whether defendant knew or should have known about [SMA]'s dubious prior safety record"). Chung I, 2013 WL 6528516, at *2.

Subsequent proceedings and communications drove home the circumscribed scope of the permitted discovery. When the parties expressed uncertainty about the reach of the court's order, the plaintiffs sought to confirm (by an e-mail to the court clerk) "that the fact discovery deadline . . . only relates to the facts related to the summary judgment issue of whether the defendant had a duty to protect the decedent and the deadline does not relate to all fact discovery on all issues in the event the motion for summary judgment is denied." The clerk responded that discovery was so limited and that "if the motion is denied, I will set up another hearing for the parties to come in and talk to the Judge." StudentCity's counsel was copied on both parts of this e-mail exchange.

StudentCity's own objections to the plaintiffs' discovery requests support our conclusion that discovery was limited and excluded causation. In framing these objections, StudentCity insisted that discovery was limited to "whether [it] represented to Lisa Chung that it would be providing supervision on the snorkeling excursion, the scope of that allegedly-assumed

- 12 -

duty, whether that duty was breached, and whether StudentCity negligently selected [SMA]."  Causation was not mentioned — a fact that undercuts StudentCity's assertion (at oral argument in this court) that the plaintiffs could have deposed its employees freely to seek information on the cause of Lisa's death.  That assertion is also undercut by the fact that, during discovery, StudentCity objected to providing "the name and contact information of all employees of [StudentCity] responsible for supervision and student safety on the date of the subject accident."[4]

Later, the district court, acting on a motion to compel, issued an order that confirmed the circumscribed nature of the permitted discovery:

> In its previous order the court allowed the parties to conduct discovery limited to certain issues raised by defendant's motion for summary judgment.  They include (1) representations made to the plaintiffs, both, participants and their parents, concerning the safety of participants; (2) investigations defendant undertook of the entities engaged for particular activities and of any brokers or agents who assisted the selection of such entities; (3) defendant's knowledge of the qualifications of the owners and crew of the vessel in issue; and (4) any other information that bears on defendant's duty, if any, to ensure participants' safety and how they performed that duty.

---

[4] Even though StudentCity proceeded to furnish this information, it restated its belief "that this request . . . exceeds the scope of the Court's . . . order in that it is not limited to whether StudentCity assumed a duty to supervise the June 7, 2008 snorkeling excursion."

Chung v. StudentCity.com, Inc., No. 10-10943, 2014 WL 644439, at *1 (D. Mass. Feb. 19, 2014). The purport of this order was quite clear.[5] And if any doubt lingered about the limited scope of the permitted discovery, that doubt was erased when the parties (after the discovery period ended) filed their supplemental briefing. Most telling was StudentCity's supplemental brief, which declared:

> the only issues are (1) whether StudentCity negligently selected the Sea Star and thus could be held liable to the plaintiffs on a negligent selection theory or (2) whether StudentCity voluntarily assumed a duty where one would not otherwise exist to ensure Lisa Chung's safety on board the Sea Star.

The district court's summary judgment order overlooks the restricted nature of the parties' opportunity to develop the facts. It incorrectly states that "[d]iscovery is now complete." It makes no mention of the limitation theretofore imposed on discovery. The order, which turned on an issue not argued by the parties and as to which no discovery had been allowed, was beyond the district court's authority. "When a court charts a procedural route, lawyers and litigants are entitled to rely on it." Berkovitz, 89 F.3d at 30.

---

[5] StudentCity argues that the phrase "how they performed that duty" imports some ambiguity into the order. Given the context, we do not think that a reasonably prudent lawyer would have believed that this oblique reference, without more, opened the door for unlimited discovery. Cf. Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 4 (1st Cir. 2006) (explaining that failure to honor discovery orders may expose attorneys to sanctions).

- 14 -

To compound the error, the plaintiffs had no notice that causation was an issue ripe for decision at this stage of the case. It is common ground that, as a precondition to the entry of summary judgment, the targeted party must be "on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). In this context, adequate notice has two components: "the summary judgment target is entitled to know both the grounds that the district court will consider and the point at which her obligation to bring forth evidence supporting the elements of her claim accrues." Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999). Here, the plaintiffs were not seasonably apprised that the court would consider the causation issue, nor were they put on notice to adduce evidence supporting their view of that issue.

In Block Island Fishing, we suggested, albeit without deciding, that it may be necessary to show prejudice when seeking to vacate a sua sponte summary judgment. See 844 F.3d at 364 & n.1. Here, the plaintiffs have satisfied any such burden. For one thing, there is every reason to believe that discovery directed at causation would have shed light on whether StudentCity's acts or omissions contributed to Lisa's death. For another thing, even on this underdeveloped record, the district court's conclusion (that no reasonable jury could find that a breach of StudentCity's voluntarily assumed duty to supervise caused Lisa's death) is far

from ironclad. The district court stated, without any elaboration, that "Lisa's death resulted not from inadequate supervision by StudentCity staff, but rather from the boat accident caused by the overloading of the Sea Star and its negligent operation by [SMA]." As we explain below, the facts do not necessarily support that leap in logic.

The plaintiffs' flagship claim is that StudentCity's failure to supervise the snorkeling excursion, in combination with the shipowner's negligence, caused Lisa's death. The district court's reasoning seems to give insufficient weight to the venerable rule that more than one tortfeasor can be held responsible for a single incident. See Shantigar Found. v. Bear Mtn. Builders, 804 N.E.2d 324, 332 (Mass. 2004) ("Under our current system of joint and several liability, a plaintiff injured by more than one tortfeasor may sue any or all of them for her full damages.").

On the meager record before us, numerous potential jury questions loom. For example, would an on-duty StudentCity representative, if on board at the commencement of the voyage, have thought that the boat was overcrowded and confronted its captain and crew?[6] Would that representative have prevented the

_____

[6] In this regard, we note that StudentCity admitted, through the deposition of its director of operations, see Fed. R. Civ. P. 30(b), that its employees should step in to quell "obvious"

- 16 -

passengers from congregating on one side of the vessel, and thus avoided its tragic imbalance?  Would StudentCity supervision have effected a more efficient emergency exit for Lisa, particularly in view of the fact that some Sea Star crew members deserted ship?

The answers to these (and other) questions of fact are not certain.  What is certain, though, is that none of these questions was properly before the district court at summary judgment.

To say more would be to paint the lily.  The record reflects that the district court granted summary judgment for StudentCity on an issue — causation — as to which no discovery had been allowed and no notice had been afforded.  That was error, and manifestly not harmless.  The summary judgment ruling, therefore, must be set aside.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

**Vacated and Remanded.**  **Costs shall be taxed in favor of the plaintiffs.**

---

dangers.  At an event not run by StudentCity, this might include alerting the managers of the gathering to the danger.