# United States Court of Appeals
## For the First Circuit

No. 17-1993

EILEEN POTVIN,

Plaintiff, Appellant,

v.

SPEEDWAY LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Torruella, Selya and Lynch,
Circuit Judges.

Dante G. Mummolo, with whom Steven Kfoury and Iannella and Mummolo were on brief, for appellant.
Mark A. Darling, with whom Devine C. Nwabuzor and Litchfield Cavo LLP were on brief, for appellee.

June 4, 2018

**SELYA**, **Circuit Judge**.  This appeal arises out of a lawsuit brought by a customer, plaintiff-appellant Eileen Potvin, against the proprietor of a self-service gas station in Tewksbury, Massachusetts (the Station).  The facts are straightforward (and largely undisputed).

On the afternoon of January 20, 2012, the plaintiff, accompanied by her boyfriend, drove her car into the Station, which was then owned and operated by Hess Corporation (Hess).  She stopped alongside a gas pump, with the driver's side adjacent to the pump.  While her boyfriend went inside to pay for the gasoline, the plaintiff exited her vehicle and went in search of a squeegee to clean her windshield.  Unable to find one, she began walking backwards toward her car.  She asserts that the heel of her right shoe got caught in a groove in the pavement, causing her to fall.

As matters turned out, the groove was part of a series of grooves, known in the trade as positive limiting barriers (PLBs), which are required by Massachusetts law.[1]  Each PLB is comprised of a series of five concentric grooves cut into the concrete surrounding a gas pump.  Because the purpose of a PLB is to contain a gasoline spill of up to five gallons, each groove

---

[1] Massachusetts regulations require that self-service gas stations be approved by the State Department of Fire Services, see 527 Mass. Code Regs. § 1.05, 42.7.4.5 (2015), which in turn mandates that all self-service gas stations install and maintain PLBs.

must be at least three-quarters of an inch wide and three-quarters of an inch deep. The record makes pellucid that the PLBs at the Station satisfied this specification.

The plaintiff's fall caused bodily injury. As a result, she filed suit against Hess in a Massachusetts state court. She claimed that Hess was negligent because the presence of the PLBs constituted a hazardous condition and Hess failed to warn of that hazard. Citing diversity of citizenship and the existence of a controversy in the requisite amount, Hess removed the action to the federal district court. See 28 U.S.C. §§ 1332(a)(1), 1441(a).

Once in federal court, the parties consented to proceed before a magistrate judge.[2] See id. § 636(c); see also Fed. R. Civ. P. 73(b). While the suit was pending, defendant-appellee Speedway LLC (Speedway) acquired certain of Hess's assets, including the Station. In connection with this transfer of interest, Speedway assumed certain of Hess's liabilities, including the responsibility for the plaintiff's lawsuit. To facilitate this assumption of liability, Hess moved to substitute Speedway as the party-defendant. See Fed. R. Civ. P. 25(c). The district court granted this motion. There is no basis for any suggestion that the substitution of Speedway for Hess affected the

_____

[2] For ease in exposition, we take an institutional view and refer to the proceedings before the magistrate judge as proceedings before the district court.

- 3 -

district court's jurisdiction.  Cf. Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428-29 (1991) (per curiam) (holding that addition of non-diverse party under Fed. R. Civ. P. 25(c) did not deprive federal court of jurisdiction).

Following the close of discovery, Speedway sought summary judgment.  See Fed. R. Civ. P. 56(a).  Although the plaintiff opposed Speedway's motion, the district court granted it.  See Potvin v. Speedway LLC, 264 F. Supp. 3d 337, 345 (D. Mass. 2017).  The court concluded that the PLBs, if dangerous at all, presented an open and obvious danger, so that the Station had no duty to warn customers about that danger.  See id. at 344-45.  This timely appeal ensued.

We recognize, of course, that a court may enter summary judgment only if, after appraising all of the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences to her behoof, the record discloses no genuine issue of material fact and indicates that the movant is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Fithian v. Reed, 204 F.3d 306, 308 (1st Cir. 2000).  We review the entry of summary judgment de novo, constrained to assay the record in the same manner as the ordering court.  See Chung v. StudentCity.com, Inc., 854 F.3d 97, 101 (1st Cir. 2017).

- 4 -

We recognize, too, that in a case founded on diversity jurisdiction, state law supplies the substantive rules of decision.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Gomez v. Stop & Shop Supermkt Co., 670 F.3d 395, 397 (1st Cir. 2012).  Here, the parties agree that Massachusetts law controls.

To prevail on a claim for negligence under Massachusetts law, "a plaintiff must carry the burden of proving the elements of duty, breach, causation, and damages."  Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014).  Although the issues of breach, causation, and damages typically are determined by a factfinder, see Cracchiolo v. E. Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014), the existence vel non of a legally cognizable duty is typically a question of law, with which the court must wrestle, see O'Sullivan v. Shaw, 726 N.E.2d 951, 954 (Mass. 2000); Davis v. Westwood Grp., 652 N.E.2d 567, 569 (Mass. 1995).

From this point forward, we need not tarry.  We have explained before that when a "trial court correctly takes the measure of a case and authors a convincing decision, it rarely will serve any useful purpose for a reviewing court to wax longiloquent" merely to hear its own words resonate.  Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st. Cir. 2010); accord Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002); Ayala v. Union de Tronquistas de P.R., 74 F.3d 344, 345 (1st Cir. 1996).  This is such a case.  Consequently, we affirm the judgment below

for substantially the reasons explicated by the district court, adding only four sets of comments.

**First**.  Even though the plaintiff concedes that the PLBs at the Station were open and obvious to the average person, she posits that a genuine issue of material fact lurks as to whether they were dangerous.  Viewing this allegedly disputed fact in the light most favorable to her cause, she argues that Speedway had a duty to warn of the danger that the PLBs presented.  Like the district court, we disagree.

A property owner generally owes a duty to protect lawful visitors from dangerous conditions on its land.  See O'Sullivan, 726 N.E.2d at 954; Toubiana v. Priestly, 520 N.E.2d 1307, 1310 (Mass. 1988).  But this duty is not the duty of an insurer:  it does not require a property owner to "supply a place of maximum safety."  O'Sullivan, 726 N.E.2d at 954 (quoting Lyon v. Morphew, 678 N.E.2d 1306, 1310 (Mass. 1997)).  Instead, a property owner is only obliged to maintain its premises in a condition that "would be safe to a person who exercises such minimum care as the circumstances reasonably indicate."  Id. (quoting Lyon, 678 N.E.2d at 1310).

Assuming, favorably to the plaintiff, that the PLBs were dangerous — a matter on which we take no view — the plaintiff admits that they were open and obvious.  Indeed, the record places this verity beyond hope of contradiction:  it makes manifest that

- 6 -

the PLBs were plainly and instantly visible to the eye of the reasonable observer. Under Massachusetts law, property owners are relieved of any duty to warn of open and obvious conditions, including those that present open and obvious dangers, since it is logical to expect that a lawful visitor exercising reasonable care for her own safety would not fall victim to such "blatant hazards." O'Sullivan, 726 N.E.2d at 954-55; see Davis, 652 N.E.2d at 570 n.9; Thorson v. Mandell, 525 N.E.2d 375, 379 (Mass. 1988); Le Blanc v. Atl. Bldg. & Supply Co., 84 N.E.2d 10, 12 (Mass. 1949); see also Gorfinkle v. U.S. Airways, Inc., 431 F.3d 19, 24 (1st Cir. 2005) (applying Massachusetts law).

This rule makes eminently good sense. "Implicit in the open and obvious doctrine . . . is the assumption that the warning provided by the open and obvious nature of the danger is by itself sufficient to relieve the property owner of its duty" to warn visitors about the dangerous condition. Papadopoulos v. Target Corp., 930 N.E.2d 142, 151 (Mass. 2010). Any additional warning would be superfluous. See Dos Santos v. Coleta, 987 N.E.2d 1187, 1194 (Mass. 2013).

That ends this aspect of the matter. Because there is no question that the PLBs were open and obvious, Speedway had no duty to warn visitors about them (whether or not they could be regarded as dangerous).

**Second**.  In a related vein, the plaintiff argues that the proprietor of the Station ought to have anticipated that customers would be distracted by their surroundings.  This potential for distraction, the plaintiff suggests, gave rise to a special duty to take extra precautions to warn customers about the PLBs.  This suggestion, which is raised for the first time on appeal, is not properly before us.  "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."  Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).  There are no extraordinary circumstances here, and this principle applies foursquare to doom the plaintiff's newly minted argument.[3]

**Third**.  The plaintiff contends that, notwithstanding the open and obvious nature of the PLBs, the proprietor of the Station had a duty to remedy the danger that they presented.  This contention, raised below in only a desultory manner, has a tenuous toehold in the case law.  In certain circumstances, the existence of an open and obvious danger will not "relieve the landowner of all duties to lawful entrants with regard to that danger."  Dos

---

[3] We note in passing that the case at hand would, in any event, seem to be a notoriously poor vehicle for advancing a "distraction" argument.  For no readily apparent reason, the plaintiff was walking backwards when she caught her heel and fell.

Santos, 987 N.E.2d at 1193 (emphasis in original). Those circumstances, though, are narrowly cabined. See Cracchiolo, 740 F.3d at 72-73 (discussing evolution of exception in Massachusetts case law). Not all dangers must be remediated. See Dos Santos, 987 N.E.2d at 1197; Davis, 652 N.E.2d at 570.

The Massachusetts Supreme Judicial Court has explained the exception pithily: "[w]hile the open and obvious doctrine may relieve the defendant of its duty to warn, the doctrine does not mean that the defendant can maintain its property 'in an unreasonably unsafe condition as long as the unsafe condition is open and obvious.'" Dos Santos, 987 N.E.2d at 1197 (citations omitted). To come within the exception, the plaintiff must show that the property owner has some heightened reason to anticipate that the unreasonably unsafe condition, though open and obvious, presents a danger likely to cause physical harm. See id. at 1193 (citing Restatement (Second) of Torts § 343A cmt. f (1965)).

Dos Santos illustrates this point. There, the court held that the exception might apply and remanded the issue concerning the property owner's duty to remedy a danger created by an open and obvious condition. See id. at 1198-99. In that case, though, the property owner had deliberately created an unreasonably unsafe condition that he should have known was dangerous by setting up a trampoline next to a shallow inflatable

pool, with "the very purpose" that visitors would attempt to jump from the trampoline into the pool.  Id. at 1198.

The case at hand is a horse of an entirely different hue, and the plaintiff has adduced no facts that would suffice to bring her case within this exception.  To begin, the Station was (for aught that appears) a typical gas station with typical PLBs. Those PLBs were required by and conformed to state law.  See supra note 1.  The defendant had no discretion about where to place them. Moreover, the plaintiff has not alleged — let alone offered facts to show — that there was anything unreasonably unsafe about either the design or the maintenance of the PLBs.  These gaps are fatal to her "duty to remedy" claim.  Cf. Dos Santos, 987 N.E.2d at 1196-97 (comparing dangers inherent in defendant's idiosyncratic pool-trampoline setup, which might give rise to a duty to remedy, with dangers inherent in typical pool, which would not give rise to such a duty).

In all events, the plaintiff has never proposed a feasible remedy that might alleviate the danger that she claims is inherent in the PLBs.  Although she mentions possibilities such as warning signs and brightly colored paints, warnings are not remedies.  Indeed, allowing a plaintiff to conflate warnings with remedies would frustrate settled doctrine.  After all, in cases in which "the only viable theory of negligence is a negligent failure to warn, the open and obvious nature of the danger causing the

- 10 -

injury will . . . relieve the landowner of any duty vis-à-vis that danger."  Id. at 1194-95.

To say more about this distinction would be pointless. Where, as here, the plaintiff does not propose a feasible remedy, a property owner cannot be held to answer for a putative duty to remedy.  See Cohen v. Elephant Rock Beach Club, Inc., 63 F. Supp. 3d 130, 146 (D. Mass. 2014).

**Fourth**.  On motion, see Fed. R. Civ. P. 25(c), the district court substituted Speedway for Hess.  The plaintiff challenges this ruling.  Our review is for abuse of discretion. See Burka v. Aetna Life Ins. Co., 87 F.3d 478, 482 (D.C. Cir. 1996); Explosives Corp. of Am. v. Garlam Enters. Corp., 817 F.2d 894, 904 (1st Cir. 1987).  Simply put, we discern no abuse of discretion.

Rule 25(c) applies to a broad spectrum of situations. See Negrón-Almeda v. Santiago, 579 F.3d 45, 53 (1st Cir. 2009). Among other things, a district court has considerable leeway to allow the substitution of parties in order to "facilitate the conduct of the litigation."  Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003).  Here, the order for substitution accomplished just such a goal:  Speedway had agreed to step into Hess's shoes and assume any and all liabilities that might flow from the plaintiff's suit.

- 11 -

To cinch the matter, the plaintiff has not shown so much as a smidgen of prejudice stemming from the substitution of parties. For example, she has not claimed that Speedway is judgment-proof; she has not asserted that the swapping of Hess for Speedway curtailed her efforts to obtain discovery in any respect; and she has not described any way in which either the presentation or the substance of her case was adversely affected by the change in parties. In the absence of any showing of prejudice, the plaintiff's animadversions concerning the district court's grant of the substitution motion necessarily fail. See Freener Bus. Sch., Inc. v. Speedwriting Publ'g Co., 249 F.2d 609, 612 (1st Cir. 1957) (per curiam).

We need go no further. For the reasons elucidated in the district court's cogent rescript, as augmented by our comments, the judgment below is

**Affirmed.**